[Cite as *State v. Gates*, 2015-Ohio-4950.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JOHN W. GATES | : | Case No. 14-CA-60 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Fairfield County
                                    Court of Common Pleas, Case No.
                                    14-CR-0183

JUDGMENT:                           Affirmed in part;
                                    Reversed and Remanded in part

DATE OF JUDGMENT:                   November 25, 2015

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

GREGG MARX                          SCOTT P. WOOD
Prosecuting Attorney                Daggar Johnston, Miller, Ogivlie &
                                    Hampson
By: ANDREA K. GREEN                 144 East Main Street
Assistant Prosecuting Attorney      P.O. Box 667
239 W. Main Street, Ste. 101        Lancaster, Ohio 43130
Lancaster, Ohio 43130

*Baldwin, J.*

{¶1} Appellant John W. Gates appeals a judgment of the Fairfield County Common Pleas Court convicting him of attempted murder (R.C. 2903.02(A)) with a firearm specification, two counts of felonious assault (R.C. 2903.11(A)(2)) with firearm specifications, two counts of kidnapping (R.C. 2905.01(A)(3)) with firearm specifications, abduction (R.C. 2905.02(A)(2)) with a firearm specification, and domestic violence (R.C. 2919.25(A)), and sentencing him to an aggregate term of incarceration of 44 years. Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On March 30, 2014, appellant and his wife Brenda spent Sunday together in the home they had shared for seven years. Appellant suggested they sit down and make notes about what they were both unhappy about in their marriage. They discussed issues in their marriage, and then watched television together.

{¶3} As the couple prepared for bed, appellant said to Brenda, "Your mother is a whore and a slut." An argument ensued, and Brenda went downstairs to sleep on the couch. Appellant followed her downstairs and continued to argue. She went upstairs to a spare bedroom to attempt to sleep, as she needed to go to work early the next morning.

{¶4} Appellant burst through the door of the spare room and the arguing continued. Brenda told appellant to leave or she would call 911. Appellant left the room and went downstairs. He got in his truck and pulled down the driveway.

{¶5}   After watching appellant drive away, Brenda turned on every light in the house so she would know when he returned.  She was frightened because of the way appellant had burst through the door of the spare bedroom.  Contemplating a divorce, Brenda collected important financial documents to take with her when she left the house the next day.  Appellant had threatened Brenda at least once a month during their marriage, "There will be no divorce, no second divorce.  Someone will lose their life or someone will lose their legs."  Tr. 480.

{¶6}   Brenda returned to the spare bedroom and heard appellant's truck come back up the driveway.  She locked the door to the bedroom.  She knew that a .45 caliber pistol was kept in the nightstand, so she placed it on top of the nightstand.  She did not know how to operate the gun and was not sure if the gun was loaded, but she hoped the gun would act as a deterrent if appellant came through the door again.

{¶7}   Appellant came upstairs, and Brenda put her hands on the door knob and the lock.  Appellant succeeded in entering the bedroom.  He saw the pistol on the nightstand, and told Brenda he was glad she put the gun there, because now he could claim self-defense.  Appellant left the room, and Brenda locked the door behind him.

{¶8}   Several minutes later, appellant returned, and Brenda again tried to block his entry by placing her hands on the lock and the door knob.  Appellant burst through the door again, this time knocking Brenda to the floor.  Appellant reached into the hallway and grabbed a 30/30 hunting rifle, a high-powered weapon used primarily to kill large game.

{¶9}   Appellant fired at the left side of Brenda's body, and Brenda saw her left leg explode.  Her left leg remained connected only by a small patch of skin.   Appellant

took a step backward into the hallway, came back into the room, and repositioned himself on the right side of Brenda. She feared that he would shoot her in the face. He raised the rifle a second time, and she begged him not to shoot her again. Appellant fired a second time, hitting her right leg. As he left the room, appellant said to Brenda two times, "Admit it. You had a gun pointed at my face." Tr. 404. However, the pistol remained on the nightstand, out of Brenda's reach. Appellant left Brenda immobilized on the bedroom floor and went downstairs.

{¶10} Brenda drug herself toward a landline phone on a shelf near the floor in the bedroom by using her upper body. She called 911 and explained that her husband had just shot both of her legs, and she thought she was dying. Although Brenda's eyes were closed, she heard appellant come back upstairs and sensed him standing over her before the phone went dead. She was unable to get a dial tone on the phone she had been using, but could hear the phone ringing in another part of the house as 911 attempted to re-connect the call.

{¶11} While waiting for help to arrive, Brenda propped her right leg on the bed to the best of her ability, but her left leg was too decimated to raise. Appellant returned to the room and continued to badger her to admit that she pointed a gun at his face. She remained still, hoping he would think she was dead.

{¶12} Law enforcement officers arrived at the home based on the 911 call from Brenda and a subsequent call placed by appellant. They surrounded the home, and appellant came out with his hands in the air. Police noted an odor of alcohol about appellant. Appellant told them that Brenda pulled a gun on him, so he had to shoot her.

{¶13} Officers could hear Brenda yelling for help from upstairs. They found her lying in a pool of blood. She was physically unable to reach the .45 caliber firearm from her position on the floor, and the magazine clip was partially out of the weapon.

{¶14} Brenda was life-flighted to the Ohio State University Surgical Center. Her injuries were so severe that she went into cardiac arrest during transport. Brenda lost her left leg, and underwent eight surgeries in the weeks following the incident.

{¶15} Appellant was interviewed shortly after the incident. He told police that they had argued about money, and Brenda pointed a gun his face and threatened to kill him. He told police that he did not intend to kill her, just hurt her. He told police that he believed his "soon-to-be ex-wife" was experiencing a change in mental stability due to menopause. Detective Kelly Staats noted he displayed arrogance and a lack of compassion during the interview.

{¶16} Appellant was indicted by the Fairfield County Grand Jury with two counts of attempted murder, two counts of felonious assault, two counts of kidnapping, and abduction, all with accompanying firearm specifications. He was also charged with tampering with evidence and domestic violence. The case proceeded to jury trial. After the presentation of evidence, the state dismissed one count of attempted murder. The jury returned a verdict finding appellant not guilty of tampering with evidence, but guilty of all other charges with the accompanying firearm specifications.

{¶17} Appellant was sentenced on October 8, 2014. The court merged Count One of attempted murder with Counts Three and Four of felonious assault. The court merged the domestic violence count with Count Four of felonious assault. The state elected to sentence on Counts Three and Four. The trial court merged Count Five of

kidnapping with Count Seven of Abduction. The State elected to have appellant sentenced on Count Five. Appellant was sentenced to eight years in prison on Count Three and an additional three years on the firearm specification, eight years in prison on Count Four with an additional three years on the firearm specification, eleven years in prison on Count Five, and eleven years in prison on Count Six, for a total term of forty-four years incarceration.

{¶18} Appellant assigns a single error on appeal:

{¶19} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT."

{¶20} In his sole assignment of error, appellant argues that the court erred in failing to merge the two felonious assault convictions, and also that the court erred in failing to merge the kidnapping convictions into the felonious assault convictions.

{¶21} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution, *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and is additionally guaranteed by the Ohio Constitution, Article I, Section 10. The Double Jeopardy Clause protects against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

{¶22} R.C. 2941.25 reads:

{¶23} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶24} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶25} At one time in Ohio, case law interpreting R.C. 2941.25 was based on *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 1999–Ohio–291, wherein the Ohio Supreme Court held that offenses are of similar import if the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* The *Rance* court further held that courts should compare the statutory elements in the abstract. *Id.*

{¶26} However, in *State v. Johnson,*128 Ohio St.3d 153, 942 N.E.2d 1061, 2010-Ohio-6314, the Ohio Supreme Court specifically overruled the 1999 *Rance* decision. The Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus.  To determine whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.  *Id.* at ¶48.  If the multiple offenses *can* be committed by the same conduct, then the court must determine whether the

offenses *were* committed by the same conduct. *Id.* at ¶49. If the answer to both questions is yes, then the offenses are allied and must be merged. *Id.* at ¶50. However, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has a separate animus for each offense, then the offenses will not merge, according to R.C. 2941.25(B). *Id.* at ¶51.

{¶27} Recently, the Ohio Supreme Court in *State v. Ruff,* 143 Ohio St. 3d 114, 34 N.E.3d 892, 2015–Ohio–995, addressed the issue of allied offenses, determining the analysis set forth in *Johnson* to be incomplete:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).
>
> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the

offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶28} Appellant first argues that the court erred in failing to merge the two counts of felonious assault. The trial court found at sentencing that the offenses would

not merge because there were two single shots, separated in time, under circumstances where different parts of Brenda Gates' body were impacted.  The court concluded that there was separation in time, action, and intent.  Sent.Tr. 103.

{¶29}  Felonious assault is defined by R.C. 2903.11(A)(2) as follows:

{¶30}  "(A) No person shall knowingly do either of the following:

{¶31}  "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶32}  Mrs. Gates testified as to the second shot to her right leg:

{¶33}  "I believe he took a step backwards first into the hallway, and then he came back in the bedroom like he was trying to decide what to do.  And he moved over to the right and repositioned himself in front of the right side of my body."  Tr. 402.

{¶34}  She went on to testify that before the second shot, she begged and pleaded with him not to shoot her again.  Tr. 403.  He then lifted the rifle, pulled the trigger, and shot her a second time.

{¶35}  Based on the testimony of Mrs. Gates, the shots were two separate actions, separated by time.  This is not a case where a shooter fired multiple shots in close succession from an automatic weapon.  After firing the first shot, appellant stopped, stepped backwards, came back into the bedroom, repositioned himself, and shot a second time.  During this time Brenda continued to plead with him to not shoot her a second time.

{¶36}  In addition, the harm that resulted from each count of felonious assault was separate and identifiable from the harm of the other offense, as discussed in *Ruff, supra.*  Brenda Gates lost her left leg to amputation as a result of the first shot.  Her

right leg was saved, but she had multiple surgeries to save her right leg due to soft tissue involvement on the back side. In addition, she had skin grafting on her right leg, which will cause issues with mobility due to contractures and a greater risk for soft tissue infection in the future. Tr. 509.

{¶37} The trial court did not err in overruling appellant's motion to merge the two counts of felonious assault.

{¶38} Appellant next argues that the two kidnapping charges should have merged into the felonious assault convictions.

{¶39} Kidnapping is defined by R.C. 2905.01(A)(3):

{¶40} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶41} "(3) To terrorize, or to inflict serious physical harm on the victim or another[.]"

{¶42} The trial court found that the two counts of kidnapping did not merge with each other:

> With regard to the offenses of kidnapping, the Court also finds that there was a separation in time during which these offenses occurred. The first offense of kidnapping, as described in Count Five, related to the Defendant forcing entry into the room, knocking Mrs. Gates to the ground, and preventing her from escape.

The second act of kidnapping occurred when the Defendant prevented Mrs. Gates from calling for help and receiving medical care, and restraining her from her liberty under those circumstances in which it was likely that she would receive serious physical harm.

The Court finds under those circumstances – it's clearly in the Court's mind a separate intent to commit the restraint necessary to establish the offense of kidnapping for each of those counts in the indictment.

{¶43} Tr. 103-104.

{¶44} The trial court did not expressly address appellant's argument that the kidnapping counts should merge with felonious assault.

{¶45} In *State v. Farringer,* 5th Dist. Fairfield No. 14-CA-43, 2015-Ohio-2644, the defendant and the victim were arguing, which at some point resulted in the defendant grabbing the victim around the neck and restraining her. She died, and the cause of death was asphyxiation by strangulation. The trial court found that the offenses of abduction and involuntary manslaughter were not allied, as the abduction was completed prior to the defendant applying additional force which led to the victim's death. We reversed based on *Ruff*, *supra*, finding that the harm that resulted from the abduction and the harm that resulted from the involuntary manslaughter were not separate and identifiable. *Id.* at ¶35.

{¶46} In *State v. Fox,* 5th Dist. Delaware No. 14 CAA10 0065, 2015-Ohio-3515, the victim was restrained in a trailer for a long period of time, where he was initially

terrorized, and later raped. The defendant conceded that one count of kidnapping, defined pursuant to R.C. 2905.01(A)(3) as restraint in order to terrorize or inflict serious physical harm, would not merge with the rape counts as the initial restraint had an independent significance apart from the rapes. *Id.* at ¶36. However, we concluded that a separate count of kidnapping, defined as kidnapping to commit rape, was an offense of similar import to the charge of rape, as it did not cause a separate identifiable harm to the victim from that of the actual rape itself, was incidental to the commission of rape, and was not committed with a separate animus. *Id.* at ¶40.

{¶47} The State argues that the first offense of kidnapping was completed in the instant case when appellant stood in the bedroom doorway after knocking Brenda to the floor, prior to his reaching into the hallway to grab the gun. However, appellant's entry into the bedroom and blocking the doorway was nearly simultaneous with his reaching back for the gun, and the kidnapping in Count Five was incidental to the offense of felonious assault. The testimony does not demonstrate that this count of kidnapping was committed separately or with a separate animus from the first count of felonious assault, nor does the record demonstrate a separate and identifiable harm to the victim from that of the felonious assault. Therefore, Count Five of kidnapping should merge with one of the counts of felonious assault.

{¶48} As to Count Six of kidnapping, while the shooting was the means by which the victim was restrained, the harm that resulted from this count was separate and identifiable to that of the felonious assaults themselves. Brenda Gates testified that after she managed to prop her right leg on the bed and call 911, appellant disconnected the call. She could hear the landline ringing and knew it was 911 trying to call, but

appellant would not answer. She testified that she tried to hold on to life long enough for someone other than appellant to be in the house. Brenda Gates suffered mental anguish from this count of kidnapping separate and apart from the felonious assault and the first count of kidnapping. In addition, Dr. Laura Phieffer testified that a difference in time of seconds to minutes between the shooting and Brenda's arrival at the hospital could have resulted in her death. As every second that she lay in the bedroom presented a further risk to her survival, the physical harm from the second kidnapping was separate and distinct from the harm caused by the shooting itself.

{¶49} The assignment of error is sustained as to Count Five of kidnapping and otherwise overruled.

{¶50} The judgment of the Fairfield County Common Pleas Court is affirmed in part, reversed in part, and remanded to that court for resentencing consistent with this opinion. Costs are assessed equally between the parties.

By: Baldwin, J.

Delaney, J. concurs

Hoffman, P.J. concurs in part
and dissents in part

*Hoffman, P.J., concurring in part and dissenting in part*

{¶51} I concur in the majority's analysis and conclusion Appellant's convictions on two counts of felonious assault are not allied offenses of similar import. I further concur in the majority's analysis and conclusion Count Five (kidnapping) should merge with one of the counts of felonious assault.

{¶52} I respectfully disagree with the majority's conclusion Count Six (kidnapping) should not merge with one of the counts of felonious assault.[1] The majority states law enforcement officers arrived at the home based on the 911 call from Brenda **and** a subsequent call placed by Appellant. If so, I am not persuaded the record affirmatively demonstrates any additional suffering or injury suffered by Brenda Gates is attributable to the second act of kidnapping in Count Six. I find the harm that resulted from the commission of the second kidnapping was not separate and identifiable from the harm resulting from the commission of the two acts of felonious assault. While arguably "prolonging" such harm, it did not result in separate or identifiable harm. Under the facts presented, I would also merge Count Six (kidnapping) with one of the felonious assault convictions.

---

[1] While I question whether the facts presented are sufficient to satisfy the "restraint of liberty" element of kidnapping, Appellant's argument only challenges the sentencing on Count Six, not the underlying conviction.