[Cite as *State v. Miller*, 2016-Ohio-2673.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| KENNETH N. MILLER | : | Case No. 15-CA-40 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Fairfield County
                                  Court of Common Pleas, Case No.
                                  2014-CR-0403



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 April 21, 2016



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GREGG MARX                                SCOTT P. WOOD
Prosecuting Attorney                      120 1/2 East Main Street
239 W. Main Street, Ste. 101              Lancaster, Ohio 43130
Lancaster, Ohio 43130

*Baldwin, J.*

{¶1} Appellant Kenneth N. Miller appeals a judgment of the Fairfield County Common Pleas Court convicting him of murder (R.C. 2903.02(A),(D)) with a firearm specification, kidnapping (R.C. 2905.01(A)(3),(C)(1)), aggravated robbery (R.C. 2911.01(A)(3),(C)), aggravated robbery (R.C. 2911.01(A)(1),(C)), two counts of tampering with evidence (R.C. 2921.12(A)(1),(B)), grand theft of a motor vehicle (R.C. 2913.02(A)(1),(B)(5)), arson (R.C. 2909.03(A)(1),(B)(2)(b)), and gross abuse of a corpse (R.C. 2927.01(B),(C)).  Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} On September 27, 2014, appellant choked Kelly Thompson in his dining room, rendering her unconscious.  He then drug her into his bedroom, where he shot her between the eyes with a .22 caliber rifle.  To cover up the crime, appellant used a spray bottle to clean blood from the carpet and surrounding area.  He stole Thompson's car and her purse.  He placed Thompson's body in the trunk of her car, which he drove several miles away and parked it in a field.  He poured lighter fluid over Thompson's body and set the vehicle on fire.  He then disposed of the rifle used to kill Thompson by throwing it near train tracks.  Appellant confessed to the crimes in a tape-recorded statement after initially maintaining his innocence.

{¶3} Appellant was indicted by the Fairfield County Grand Jury on two counts of aggravated murder, two counts of murder, kidnapping, two counts of aggravated robbery, two counts of robbery, two counts of tampering with evidence, grand theft of a motor vehicle, arson, and gross abuse of a corpse.  All counts included firearm specifications. On June 12, 2015, appellant entered a plea of guilty pursuant to *North Carolina v. Alford,*

400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to murder (count 3) with a firearm specification, kidnapping (count 5), two counts of aggravated robbery (counts 6 and 7), two counts of tampering with evidence (counts 10 and 11), grand theft of a motor vehicle (count 12), arson (count 13), and gross abuse of a corpse (count 14).

{¶4} The parties submitted memoranda to the court stating their positions on the issue of allied offenses of similar import and merger for sentencing. The State argued that count six of aggravated robbery should merge with count twelve of grand theft of a motor vehicle, but none of the other offenses were allied. Appellant argued that counts three, five, six and seven should merge, and also that counts ten, eleven, thirteen and fourteen should merge.

{¶5} The trial court found that counts six and seven were allied, and the State elected to have appellant sentenced on count seven. The court further found that counts six and twelve were allied, and counts fourteen and eleven were allied. The court sentenced appellant to fifteen years to life for murder, with an additional three year sentence on the firearm specification; eight years for kidnapping; seven years for aggravated robbery; three years for each count of tampering with evidence; and one year for gross abuse of a corpse. All sentences were ordered to be served consecutively.

{¶6} Appellant assigns one error:

{¶7} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT."

{¶8} Appellant argues that the court erred in failing to merge the convictions of murder and kidnapping (counts three and five), the convictions of tampering with evidence (counts ten and eleven), and the convictions of tampering with evidence and arson (counts eleven and thirteen).

{¶9} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution, *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and is additionally guaranteed by the Ohio Constitution, Article I, Section 10. The Double Jeopardy Clause protects against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

{¶10} R.C. 2941.25 reads:

{¶11} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶12} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶13} At one time in Ohio, case law interpreting R.C. 2941.25 was based on *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 1999–Ohio–291, wherein the Ohio Supreme Court held that offenses are of similar import if the offenses "correspond to such

a degree that the commission of one crime will result in the commission of the other." *Id.* The *Rance* court further held that courts should compare the statutory elements in the abstract. *Id.*

**{¶14}** However, in *State v. Johnson,*128 Ohio St.3d 153, 942 N.E.2d 1061, 2010-Ohio-6314, the Ohio Supreme Court specifically overruled the 1999 *Rance* decision. The Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus. To determine whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Id.* at ¶48. If the multiple offenses *can* be committed by the same conduct, then the court must determine whether the offenses *were* committed by the same conduct. *Id.* at ¶49. If the answer to both questions is yes, then the offenses are allied and must be merged. *Id.* at ¶50. However, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has a separate animus for each offense, then the offenses will not merge, according to R.C. 2941.25(B). *Id.* at ¶51.

**{¶15}** Recently, the Ohio Supreme Court in *State v. Ruff,* 143 Ohio St. 3d 114, 34 N.E.3d 892, 2015–Ohio–995, addressed the issue of allied offenses, determining the analysis set forth in *Johnson* to be incomplete:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an

analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes

offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶16}** *Id.* at ¶24-26.

### Counts Three and Five – Murder and Kidnapping

**{¶17}** Appellant first argues that the court should have merged the convictions for murder and kidnapping. The trial court found the acts of choking the victim until she was unconscious and dragging her to the bedroom, which supported the crime of kidnapping, were not the same actions which caused her death. Rather, she was killed after the kidnapping was complete, when she was shot in the head. The court found a "definite distinction and separation" between the acts constituting the restraint of the victim and the ultimate cause of death by a weapon. Tr. 11.

**{¶18}** Appellant was convicted of murder in violation of R.C. 2903.02(A), which provides, "No person shall purposely cause the death of another." He was also convicted of kidnapping in violation of R.C. 2905.01(A)(3):

**{¶19}** "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

**{¶20}** "(3) To terrorize, or to inflict serious physical harm on the victim or another[.]"

**{¶21}** In *State v. Farringer,* 5th Dist. Fairfield No. 14–CA–43, 2015–Ohio–2644, the defendant and the victim were arguing, which at some point resulted in the defendant grabbing the victim around the neck and restraining her. She died, and the cause of death was asphyxiation by strangulation. The trial court found that the offenses of abduction

and involuntary manslaughter were not allied, as the abduction was completed prior to the defendant applying additional force which led to the victim's death. We reversed based on *Ruff, supra,* finding that the harm that resulted from the abduction and the harm that resulted from the involuntary manslaughter were not separate and identifiable. *Id.* at ¶ 35.

**{¶22}** In *State v. Gates,* 5th Dist. Fairfield No. 14-CA-60, 2015-Ohio-4950, the defendant stood in the bedroom doorway after knocking the victim to the floor, prior to his reaching into the hallway to grab a gun which he used to shoot the victim in the leg. His entry into the bedroom and blocking the doorway was nearly simultaneous with his act of reaching back for the gun, and we therefore concluded that kidnapping was incidental to the offense of felonious assault. *Id.* at ¶47. The testimony did not demonstrate that the kidnapping was committed separately or with a separate animus from the felonious assault, nor did the record demonstrate a separate and identifiable harm to the victim from that of the felonious assault. *Id.*

**{¶23}** In *Farringer,* choking the victim was both the method used to restrain the victim and the cause of death. In the instant case, choking Thompson rendered her unconscious, but the facts as set forth in the bill of particulars as to count five state, "This act of kidnapping was completed before the Defendant shot her and was committed with a separate animus." The statement of the evidence as set forth by the prosecutor at the time of the plea confirmed that cause of death according to the coroner was the gunshot, not the choking nor the later fire in the field. Plea Tr. 23.

**{¶24}** Further, the kidnapping in the instant case was not merely incidental to the shooting as in *Gates.* In *Gates,* the restraint of movement was brief, and committed

simultaneously with reaching for the gun to shoot the victim. In the instant case, appellant choked the victim until she was unconscious, then drug her to another room before shooting her. The acts were committed separately, and the harm cause to the victim by being choked to the point of losing consciousness and drug to a separate part of the house was separate from the harm caused by the gunshot to her head.

{¶25} The trial court did not err in finding the convictions of murder and kidnapping to not be allied offenses of similar import.

**Counts Ten and Eleven – Tampering With Evidence**

{¶26} Appellant argues that the two counts of tampering with evidence should have merged. The bill of particulars for count ten alleged that appellant removed blood from the bedroom carpet and used a spray bottle to clean her blood from the carpet, a cabinet, and/or a chest in the bedroom. The bill of particulars for count eleven alleged that appellant removed the victim's body from the crime scene and disposed of it by placing it in the trunk of her car and driving it to a secluded area where he lit the car on fire, and further that he disposed of the murder weapon.

{¶27} The trial court found that appellant's animus as to both offenses was the destruction of evidence and impairment of an investigation, and the harm caused was the same in both offenses. However, the court found that the specific conduct was significantly separate in time, manner, and method so as to result in different conduct as to each offense.

{¶28} Appellant relies on this Court's opinion in *State v. Walton,* 5th Dist. Stark No. 2011 CA 00214, 2012-Ohio-2597, to support his argument that a person's conduct cannot be broken down into microseconds, but should be examined to determine if the

charges are inextricably part of the same conduct. In *Walton,* the defendant fired five rounds into a house, one of which killed a person inside. We concluded that the offenses of murder and improperly discharging a firearm into a habitation should be merged, as the act and animus were inextricably part of the same conduct. *Id.* at ¶56.

{¶29} In *Gates, supra,* the defendant argued that two counts of felonious assault should merge where he shot the victim once in each leg. We found that the offenses were not allied because the shots were two separate actions, separated by time. 2015-Ohio-4950 at ¶35. After firing the first shot, Gates stopped, stepped backwards, came back into the bedroom, repositioned himself, and shot a second time. *Id.*

{¶30} In the instant case, the two counts of tampering with evidence were different actions, separated by time and place. In count ten, appellant cleaned the blood from the scene of the crime. In count eleven, appellant removed evidence from the scene, drove it to another area, and disposed of the body and the firearm. The actions were two separate actions, separated by both time and space. The offenses were therefore not allied, and the court did not err in failing to merge the two counts.

**Counts Eleven and Thirteen – Tampering With Evidence and Arson**

{¶31} Appellant argues that count eleven of tampering with evidence and count thirteen of arson should merge, as both involve the same conduct of setting the victim's car on fire.

{¶32} Tampering with evidence is defined by R.C. 2921.12:

{¶33} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶34} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶35} Arson is defined by R.C. 2909.03:

{¶36} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:

{¶37} "(1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent[.]"

{¶35} The court found that the harm caused by appellant's conduct was separate in each charge. The harm that resulted from lighting the car on fire was the destruction of the victim's car, while the harm that resulted from the tampering with evidence charge, although caused by lighting the car on fire, was the impairment of the victim's body as an item of evidence.

{¶36} Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or when the harm that results from each offense is separate and identifiable. *Ruff, supra,* at ¶26. The charge of arson dealt with the destruction of Thompson's car, while the tampering with evidence charge dealt with the destruction of Thompson's body, albeit through the same fire. However, the harm caused by the destruction of the car was separate from the harm caused by the destruction of Thompson's body, which involved the impairment of the investigation of the murder. Further, the harm caused by the arson which destroyed Thompson's vehicle was caused to Thompson and/or her estate, while

the harm caused by the tampering with evidence charge related to the body was caused to the State through the hampering of the investigative process.

**{¶37}** The court did not err in failing to merge Counts eleven and thirteen.

**{¶38}** The assignment of error is overruled.  The judgment of the Fairfield County Common Pleas Court is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. concurs.

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

{¶39} I concur in the majority's analysis and disposition of Appellant's assigned error with regard to Counts Ten and Eleven - Tampering With Evidence and with regard to Counts Eleven and Thirteen - Tampering With Evidence and Arson.

{¶40} I further concur in the majority's disposition with regard to Counts Three and Five - Murder and Kidnapping. I write separately only to clarify my reason for doing so.

{¶41} I find the bill of particulars with regards to Count Five (Kidnapping) is based upon two different factual and conceptual premises. The first being Appellant restrained the victim's liberty by choking her unconscious in the dining room for the purpose of terrorizing or inflicting serious physical harm. The second being dragging her, while unconscious, from the dining room to the bedroom for the purpose of killing her. I find both factual premises could support a separate indictment for and conviction of kidnapping.

{¶42} I agree with the majority the act of choking the victim unconscious constitutes an act of kidnapping and was conduct committed separately from the murder. However, I would find the act of dragging the victim to the bedroom to commit the murder was committed with the same animus and, applying the analysis used by the Ohio Supreme Court in *State v. Logan* (1979), 27 Ohio St.2d 196, that separate act of kidnapping (had it been separately indicted and pled guilty to) would have merged for sentencing purposes with the murder count.