[Cite as *State v. Ferricci*, 2022-Ohio-1393.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 110208 |
| MICHAEL FERRICCI, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 28, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-607929-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey S. Schnatter and Janna R. Lifford, Assistant Prosecuting Attorneys, *for appellee.*

Friedman & Nemecek, L.L.C., and Eric C. Nemecek, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Michael Ferricci, appeals his rape conviction. For the reasons that follow, we reverse and remand for a new trial.

## I. Procedural Background

{¶ 2} In 2016, Ferricci was named in a multicount indictment arising from allegations that he sexually assaulted a minor child at the daycare center where he worked.

{¶ 3} In November 2017, the matter proceeded to a jury trial on one count of rape in violation of R.C. 2907.02(A)(1)(b) (sexual conduct with a child under the age of 13), and one count of kidnapping in violation of R.C. 2905.01(A)(4) (removal or restraint of a child under 13 for the purpose of engaging in sexual activity) with a sexual motivation specification under R.C. 2941.147(A).[1] The jury acquitted Ferricci of kidnapping, but could not reach a verdict on the rape offense. The trial court declared a hung jury and scheduled a new trial on the rape offense for February 2018, which was later continued until May 2018. Trial was continued again until February 24, 2020, following Ferricci's unsuccessful appeal of the trial court's denial of his motion to dismiss based on double-jeopardy grounds. *See State v. Ferricci*, 8th Dist. Cuyahoga No. 107279, 2019-Ohio-994.

{¶ 4} In preparation for retrial, Ferricci requested discovery from the state pursuant to Crim.R. 16 and the state requested reciprocal discovery. The parties supplemented discovery, including their respective witness lists, throughout the pretrial proceedings. On February 24, 2020, the day of trial, the state filed a

---

[1] Prior to trial, the state dismissed the counts charging Ferricci with sexual battery, unlawful sexual conduct with a minor, and public indecency.

supplemental response to discovery identifying Dr. Sandra McPherson, an expert in forensic psychology, as a state's witness. The state concedes that it did not provide defense counsel with Dr. McPherson's expert report as required under Crim.R. 16(K).

{¶ 5} Interestingly, the defense had retained McPherson as an expert in preparation for Ferricci's first trial, and pursuant to Crim.R. 16(K), the defense provided the state with Dr. McPherson's expert report for the first trial. Ultimately Dr. McPherson testified as Ferricci's expert at the 2017 trial. For retrial, however, the defense did not identify Dr. McPherson as a potential witness, nor did it provide the state with Dr. McPherson's expert report in its discovery responses.

{¶ 6} The February 24, 2020 trial date was continued due to the unavailability of a defense witness. The second trial commenced on March 2, 2020, on the sole count of rape.

## II. The 2020 Retrial

{¶ 7} In 2016, then three-year-old C.W. attended preschool in Shaker Heights. June 27, 2016, was "Mud Day" at the school. When C.W. got home from school, his mother asked about his day — inquiring about "Mud Day" and if he got dirty. According to his mother, C.W. said that "Mr. Mike" had "stuck his" "pee pee" or "penis" in his mouth. C.W.'s father testified that his son had never said anything like that before. C.W.'s mother stated that she asked C.W. to show her what "Mr. Mike" had done and C.W. put his head down in his mother's lap. C.W.'s mother said that C.W. told her that "Mr. Mike told him not to tell his mommy." (Tr. 491.) C.W.'s

mother and father contacted a relative who worked in law enforcement and then called the Shaker Heights Police Department.

{¶ 8} During his interview with police, C.W. told the officers that he saw "Mr. Mike" "going tinkle." Subsequently, C.W. was taken to the hospital. At the hospital, C.W. was seen by Angelita Olowu, a SANE nurse examiner. The nurse met with the family, evaluated C.W., and asked him questions about what had happened during school. According to Olowu, C.W. made no disclosures to her regarding the allegations.

{¶ 9} C.W., who was seven years old at the time of the second trial, testified that he remembered that "Mr. Mike" put his penis in C.W.'s mouth. He remembered telling his mother but did not remember talking to the police or a social worker about what happened. He also testified that what happened was "real," not "make-believe."

{¶ 10} Heather Pado, C.W.'s teacher, explained to the jury that June 27, 2016, was "Mud Day" — a day during which the children were allowed to play outside in the mud and get really dirty. Pado testified that C.W. and Ferricci were alone together in the bathroom for two minutes. When C.W. returned to the classroom, he acted "normal."

{¶ 11} Over objection, forensic psychologist Dr. Sandra McPherson testified on behalf of the state. Dr. McPherson informed the court that she had reviewed the report she authored for the defense for the first trial but could not locate her file on

the case. The trial court allowed Dr. McPherson to use her testimony from her first trial to refresh her recollection.

{¶ 12} Dr. McPherson testified that she is semi-retired but has been licensed to practice psychology in the state of Ohio since 1972 and has worked with both adults and children who have reported some form of sexual abuse. She testified that she is trained in the questioning of children. Dr. McPherson did not interview either C.W. or Ferricci, but reviewed the questioning of C.W. by various parties, including the police. According to Dr. McPherson, the police officer who interviewed C.W. "clearly had not had any of the necessary training, not for dealing with a very small child." Dr. McPherson noticed several factors that made the police interview "less than ideal," and testified that because the officer failed to follow accepted protocols when interviewing C.W., the "entire interview" with C.W. would not be considered "to meet any kind of reasonable expectations." Dr. McPherson also opined that the initial disclosure that C.W. made to his mother would likely be the most accurate and reliable version of events, and the likelihood that C.W. would have said someone put "their penis in the child's mouth is pretty low unless it actually happened."

{¶ 13} Shaker Heights Police interviewed Ferricci for over three hours. The state submitted Ferricci's police interrogation video as an exhibit at trial. The jury watched and listened to a redacted version of Ferricci's interrogation with police. During his lengthy police interrogation, Ferricci repeatedly denied that he had done anything inappropriate to C.W. After two hours and forty-five minutes into the

interrogation, Ferricci changed his story several times and stated that he placed his penis on C.W.'s mouth while they were in the preschool bathroom.

{¶ 14} Dr. Richard A. Leo, a qualified and designated expert in the area of social sciences and confessions, testified on behalf of Ferricci. Dr. Leo testified regarding the science of coerced confessions. He opined that Ferricci's interrogation was predicated on a "guilt presumptive" model and that the officers were accusatory and very aggressive throughout the interaction. Dr. Leo further noted that these tactics, when combined with the overall length of the interrogation, could have contributed to Ferricci providing a false confession.

{¶ 15} Ferricci testified in his own defense. During his trial testimony, Ferricci denied doing anything inappropriate to C.W. When asked about his admission to police detectives, he said:

> I had told [the police] a few times that I didn't do anything and I had told them the incidences that had happened. And they told me that — that it wasn't good enough, that it didn't make sense or that I was lying. There were a few times where they told me I was talking "B.S." and so I felt — I felt like there was no way out unless I said what they wanted me to say.

{¶ 16} The jury convicted Ferricci of rape and the further finding that the victim at the time of the offense was under 10 years of age. The trial court classified Ferricci as a Tier III sex offender and sentenced him to life in prison with the possibility of parole after 15 years. The trial court granted Ferricci an appellate bond because of the continuing COVID-19 coronavirus pandemic.

## III. The Appeal

{¶ 17} Ferricci now appeals, raising the following four assignments of error:

I.  The trial court erred by permitting the state to call a defense expert witness during its case-in-chief.

II.  Ferricci's convictions are against the weight of the competent, credible, evidence introduced at trial and must be reversed in order to avoid a manifest miscarriage of justice.

III.  The trial court failed to properly instruct the jury as to each element of the charged offense.

IV.  The trial court erroneously prevented defense counsel from eliciting testimony from Dr. Leo on the issue of false or coerced confessions.

{¶ 18} Following oral argument, this court sua sponte ordered the parties to brief the following issues as it relates to Ferricci's first assignment of error: "Did the trial court err when it allowed into evidence testimony that the defendant retained Dr. Sandra McPherson?  Was it error for the state to comment during closing arguments on which party retained Dr. Sandra McPherson?"  We will address these additional issues within the first assignment of error, which is dispositive of this appeal.

## A.  Expert Testimony

{¶ 19} The defense retained Dr. McPherson as an expert in preparation for Ferricci's first trial.  Pursuant to Crim.R. 16(K), the defense disclosed Dr. McPherson as its expert and provided the state with her expert report.  McPherson also testified as Ferricci's expert at the 2017 trial.  For retrial, however, the defense chose not to use Dr. McPherson as its expert.  Accordingly, in its discovery responses in preparation for retrial, the defense did not list Dr. McPherson as a witness, expert or otherwise, and did not provide the state with her report.

{¶ 20} Trial was scheduled to begin on February 24, 2020. The record reflects that the state filed a supplemental witness list the morning of trial, indicating that Dr. McPherson would be called as an expert witness on behalf of the state. Trial was continued for one week at the defendant's request due to witness unavailability.

{¶ 21} During trial, the state attempted to call as a witness William Roser, a children and family services social worker, who interviewed C.W. following the accusation.[2] The state maintained that based on comments made to the jury about C.W. making different and inconsistent statements, Roser's testimony was important because he would testify about forensic interviewing techniques. Defense counsel objected, contending that he was not an expert in this field and that his testimony was duplicative and cumulative to the testimony already provided by C.W. and his mother. After reviewing Roser's testimony from the 2017 trial, the court sustained the objection and Roser was not permitted to testify.

{¶ 22} The state then announced it was calling Dr. McPherson. Defense counsel objected, contending that Dr. McPherson was a defense-retained expert in the first trial. The trial court nevertheless permitted the testimony. The defense raised additional objections during the beginning of Dr. McPherson's testimony that resulted in side-bar conversations conducted both on and off the record.

{¶ 23} During one side-bar conference, it was discovered that although Dr. McPherson had reviewed the report she authored for the defense for the first trial,

---

[2] Roser testified during the 2017 trial.

she could not locate her file on the case. When the state could not refresh Dr. McPherson's recollection with her report, the trial court allowed Dr. McPherson to refer to her testimony from the first trial to refresh her recollection.

{¶ 24} The defense objected again after defense counsel perceived that the state's questioning of Dr. McPherson was generating answers that vouched for C.W.'s credibility and truthfulness of the disclosure. During this sidebar conference, counsel challenged the trial court's decision to allow Dr. McPherson to testify, contending that the state did not provide the defense with her expert report and that because Dr. McPherson was a defense-retained expert in Ferricci's first trial, her report was protected under the attorney-client and/or work-product privileges.

{¶ 25} During this side-bar conversation, the state admitted that it did not submit an expert report, but maintained that the report would have been the same report that the defense provided the state during discovery for Ferricci's first trial. Defense counsel noted, however, that the state's questioning was beyond what the report provided. The state agreed but maintained that its questioning was in line with the testimony the state had elicited from Dr. McPherson in the first trial.

{¶ 26} When questioned about the state's disclosure of Dr. McPherson as a witness, the prosecutor advised the trial court that when it learned from the defense a week prior to trial that it was undecided as to whether the defense would call Dr. McPherson as a witness, the state supplemented its witness list to include Dr. McPherson as a state's witness. The state did not tell the trial court that the supplemental list was not filed until the morning of the February 2020 trial date.

{¶ 27} The court permitted Dr. McPherson to continue testifying but cautioned the state that any testimony regarding the validity or falsity of disclosures would not be tolerated.

{¶ 28} In his first assignment of error, Ferricci contends that the trial court erred in allowing Dr. McPherson to testify. Specifically, he contends that the attorney-client and/or work-product privileges should have precluded the state from calling Dr. McPherson as a witness and utilizing her report, which was not provided to the defense during the pretrial phase of the second trial.

{¶ 29} "Evidentiary rulings made at trial rest within the sound discretion of the trial court." *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233 (8th Dist.), citing *State v. Lundy*, 41 Ohio App.3d 163, 535 N.E.2d 664 (1st Dist.1987). A trial court's admission of expert testimony is also reviewed for an abuse of discretion. *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 161. An abuse of discretion occurs when "a court exercise[es] it's judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, Slip Opinion No. 2021-Ohio-3304, ¶ 35.

### 1. Preservation of Error

{¶ 30} At the outset, the state contends that Ferricci has waived any claim regarding Dr. McPherson's testimony because he did not properly preserve his claims for appeal. According to the state, the defense's general objection at trial was

insufficient to preserve the specific issues raised by the defense on appeal. We disagree.

{¶ 31} Not only did the defense enter a general objection when the state announced its intention to call Dr. McPherson as an expert witness, the defense specifically noted that Dr. McPherson was its expert witness in the first trial. Additionally, during Dr. McPherson's testimony, defense counsel objected several times to the state's questions and, during one sidebar conference, defense counsel reiterated the defense's objection to her testimony in general. *See State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 54, fn. 3 (general objection sufficient to preserve issue on appeal).

{¶ 32} In fact, after the state's questioning started eliciting arguably inappropriate testimony regarding the truthfulness of C.W.'s disclosures, one of Ferricci's defense attorneys raised the issue of attorney-client privilege and insisted that he had no knowledge the state was going to call Dr. McPherson as a witness. Defense counsel further objected to Dr. McPherson's testimony because the state had not submitted any expert report in discovery as required under to Crim.R. 16(K).

{¶ 33} While a violation of Crim.R. 16(K) may be waived — for instance when an appellant objected only to the admission of the expert's report but not to the expert's testimony, *see State v. Williams*, 6th Dist. Lucas No. L-14-1067, 2015-Ohio-1686, ¶ 17-21 — here, defense counsel did not waive this issue. Our review of the record reveals that defense counsel made no less than three objections regarding the state using Dr. McPherson as a state witness and further made several specific

objections to her testimony. Accordingly, we find that Ferricci has not waived his claims on appeal.

## 2. Work-Product/Attorney-Client Privilege

{¶ 34} Crim.R. 16 governs criminal discovery and inspection. Crim.R. 16(H) addresses a defendant's obligation to provide the prosecution with reciprocal discovery. Relevant to the appeal, the defense is obligated to provide to the state "all investigative reports," except those "subject to work-product protection," including but not limited to "reports, memoranda, or other internal documents made by * * * defense counsel, or their agents in connection with the investigation * * * or defense of the case." Crim.R. 16(H) and (J).

{¶ 35} Additionally, Crim.R. 16(K) provides that an expert witness for either the state or the defense "shall prepare a written report summarizing the expert's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications." However, this subsection of the rule does not require disclosure of "written reports of consulting experts who are not being called as witnesses." *See* Crim.R. 16(K), 2010 Staff Note.

{¶ 36} Ferricci contends that the state was prohibited from calling Dr. McPherson as its expert at retrial because she was retained by the defense as Ferricci's expert in the 2017 trial, and the defense chose not to utilize the doctor on retrial. The issue, therefore, is whether a defense expert in the first trial is an agent of the defense and thus protected by the attorney-client privilege or work-product

privilege in a subsequent retrial when the defense chooses not to call that expert to testify.

{¶ 37} In support of his argument, Ferricci cites *State v. Fairchild*, 2d Dist. Darke No. 1481, 1999 Ohio App. LEXIS 4012 (Aug. 27, 1999), and *State v. Kopchak*, 5th Dist. Muskingum No. CT2017-0036, 2018-Ohio-1136.

{¶ 38} In *Fairchild*, the defendant was convicted of burglary. Prior to trial, defense counsel retained an expert to examine fingerprint evidence. At trial, the state presented testimony from its own fingerprint expert, who opined that the fingerprints found at the scene of the crime matched those of the defendant. The state then called the defense's expert witness to testify during its case-in-chief. Under direct examination, the defense expert agreed with the conclusions of the state's fingerprint analyst.

{¶ 39} On appeal, the defendant argued that trial counsel was ineffective for not objecting to the state's use of the defense's expert witness during its case-in-chief, because the expert's report and opinion were protected by the "work-product" privilege and should therefore not have been subject to disclosure or use by the state.

{¶ 40} The Second District concluded that the trial court erred by permitting the state to use a defense-retained expert. The court held that "the use of such testimony contravenes the work-product privilege enjoyed by the defendant." *Fairchild* at 15. The court also referenced the "chilling effect" that a contrary determination would have on defense counsel's ability to represent their clients, noting that defense attorneys would be deterred from seeking out such experts and

developing work product on behalf of their clients if said experts could be used by the state during its case-in-chief.

{¶ 41} In *Kopchak*, 5th Dist. Muskingum No. CT2017-0036, 2018-Ohio-1136, the defendant was indicted on two counts of rape. As part of its investigation, the Bureau of Criminal Investigation ("BCI") conducted DNA analysis of bodily fluids found on an article of the defendant's clothing and compared it with a standard submitted by the defendant, and the swabs from the victim's rape kit. The defendant's first attorney retained an expert in the field of forensic DNA analysis to perform independent testing of the results obtained by BCI. The expert did not perform any additional testing and reviewed the procedures and methods utilized by BCI. The expert then provided a letter to defense counsel opining that BCI's procedures were conducted accurately and reliably.

{¶ 42} The defendant retained new counsel prior to trial. The new attorney filed a written response to the state's discovery request, stating that the defense did not intend to call any expert witnesses at trial. The state was aware that prior counsel had retained a DNA expert and attempted to obtain a copy of any report or letter that was generated in connection with that expert. Following a hearing, the court ordered defense counsel to provide the state with a copy of the expert's letter. During trial and over the objection of defense counsel, the state was permitted to call the defense's expert witness to testify during its case-in-chief.

{¶ 43} The Fifth District determined that the trial court erred by requiring the defense to disclose its expert's letter to the state and by permitting the state to

call the expert as a witness during its case-in-chief. The court noted that Crim.R. 16 explicitly recognizes that certain classes of materials — including those covered by the attorney-client and work-product privileges — must be excluded from discovery. *Id.* at ¶ 23.

{¶ 44} The state seeks to distinguish *Kopchak* and *Fairchild*, arguing that the difference is that Dr. McPherson's testimony and expert report had already been disclosed in the first trial and, therefore, the state was not seeking to use privileged information. According to the state, Ferricci waived any privilege he possessed by having Dr. McPherson testify at the first trial and by not properly objecting to her testimony at the second trial. Although the separate opinion seemingly is persuaded by the state's position, this writer is not.

{¶ 45} It has already been determined that Ferricci properly preserved this matter for our review. Moreover, Ferricci's first and second trials are two separate and distinct matters, demonstrated by the fact that the parties initiated new discovery requests and responses; thus the parties did not intend to rely on their initial discovery requests and responses, including witness lists.

{¶ 46} Dr. McPherson was not on the defense witness list for the second trial, nor had the defense disclosed or turned over her expert report to the state for use in the second trial. Any information the state gleaned from Dr. McPherson came from a separate proceeding — Ferricci's first trial. The state has not provided this court any authority that would allow it to use a defense witness from a prior proceeding in its case-in-chief without following the rules of discovery.

{¶ 47} It is undisputed that the defense did not intend to call Dr. McPherson as a witness during its case-in-chief in the second trial. Thus, as in *Kopchak* and *Fairchild*, Dr. McPherson was an agent of the defense who consulted on issues relating to the interviews of C.W. As such, the state was precluded from calling Dr. McPherson as a witness and utilizing her expert report at trial. *Compare* Civ.R. 26(B) (consulting expert's work product is part of the work product of the attorney who retained the expert) and *Nunley v. Nationwide Children's Hosp.*, 10th Dist. Franklin No. 13AP-425, 2013-Ohio-5330, ¶ 16 (addressing the intent of the consulting expert privilege is "to prevent unfairness that could result from allowing an opposing party to reap the benefits of another party's efforts and expense"); *see also State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992) (no plain error found, but the court noted that "the prosecutor's use of a defense expert may violate an accused's attorney-client privilege").

{¶ 48} This conclusion is not altered by the fact that the defense had previously provided a copy of Dr. McPherson's report to the state or called her to testify during Ferricci's first trial. Rather, as the Supreme Court of New Jersey has recognized, while the defense may waive certain aspects of confidentiality by furnishing the state with a report from an expert they intend to call at trial, "the defense does not waive its right to control the testimonial use of the expert [who] remains unavailable to the State as a witness." *State v. Mingo*, 77 N.J. 576, 586, 392 A.2d 590 (1978). The *Mingo* Court reasoned:

[T]he right to confidentiality we have recognized not only places limitations on prosecutorial discovery but also affords an evidentiary privilege. If the expert actually testifies for the defense concerning the substance of the reports [s/]he has rendered to defense counsel, the State remains able to effectively cross examine him [or her] with respect thereto by reason of the discovery it has been granted. However, should the defense elect not to present the expert as a witness after previously indicating to the contrary, the fact that his [or her] otherwise confidential reports have been disclosed to the prosecution does not entitle the State to call the expert as its witness over objection by the defense. The testimony of a defense consultant concerning the substance of expert services [s/]he has performed for the defense is exclusively available to the defense. If the defense trial strategy results in his not being called to testify, his [or her] potential testimony on that subject remains privileged from use by the State.

*Id.*

{¶ 49} Accordingly, this writer finds that the trial court abused its discretion in allowing Dr. McPherson to testify on behalf of the state during Ferricci's retrial when the expert was retained by and testified on behalf of the defense during the first trial. Dr. McPherson became an agent of the defense pursuant to Crim.R. 16(J) once the defense decided not to call her as a witness at retrial. Accordingly, her report was subject to the protections of the work-product privilege under the criminal rules.

{¶ 50} Moreover, even if this writer agreed with the separate opinion that this tactical maneuver by the state is permissible and not in violation of any attorney-client or work-product privilege, this writer would find that the state failed to follow the discovery rules of Crim.R. 16(K) and, therefore, the court should have precluded Dr. McPherson's testimony at trial.

### 3. Crim.R. 16(K)

{¶ 51} During a side bar conference, Dr. McPherson stated that she possessed a copy of her expert report but had lost her file. Defense counsel objected to Dr. McPherson's testimony, arguing that the state had failed to turn over her expert report in discovery. The state responded that Dr. McPherson was a defense witness in the 2017 trial and thus, defense counsel would already have her report because it was the same report that defense counsel provided to the state in discovery for the 2017 trial. The trial court overruled the objection.

{¶ 52} Crim.R. 16(K) requires that experts generate written reports and that those reports be disclosed to the opposing party 21 days prior to trial. Crim.R. 16(K) provides:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 53} The purpose of Crim.R.16(K) is to prevent "either party from avoiding pretrial disclosure of the substance of expert witness's testimony by not requesting a written report from the expert, or not seeking introduction of a report." Crim.R. 16(K), 2010 Staff Notes.

{¶ 54} In *Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, the Ohio Supreme Court noted that "[e]ffective July 1, 2010, Crim.R. 16 underwent

comprehensive changes in large part to strengthen the protections of a defendant's constitutional due-process rights to a fair trial." *Id*. at ¶ 44, citing Grove, *Criminal Discovery in Ohio: "Civilizing" Criminal Rule 16*, 36 U.Dayton L.Rev. 143, 144-145 (2011). The changes to Crim.R. 16 promote "more open discovery," leveling the playing field by strengthening the defendant's right to know the evidence the state will present against him or her at trial. *Id*.

{¶ 55} The state conceded at trial that it did not comply with Crim.R. 16(K) because it did not ask Dr. McPherson to prepare an expert report and did not furnish an expert report to the defense. Additionally, the record is undisputed that the state did not comply with the 21-day deadline as required by Crim.R. 16(K). The state contends that defense counsel was already in possession of the expert report because of the 2017 trial and Dr. McPherson did not prepare a new report for retrial. Thus, according to the state, Ferricci was not surprised by Dr. McPherson's report or testimony because the report had already been disclosed and it was permissible for the state to use her expert report. Although the separate opinion might agree with the state, this writer cannot.

{¶ 56} First, under the plain language of Crim.R. 16(K), the state — just like the defense — is mandated to provide and disclose all expert reports from expert witnesses the state intends on calling to testify to trial. This did not happen. If the state wished to call Dr. McPherson, it was obligated to provide the defense with her expert report — even if the defense already had a prior report that Dr. McPherson had authored on behalf of the defense for the 2017 trial. Accordingly, the state's

violation of Crim.R. 16(K) should have precluded Dr. McPherson from testifying. *See State v. Fowler*, 7th Dist. Columbiana No. 20 CO 0002, 2020-Ohio-2854, ¶ 39 (Crim.R. 16(K) limits a trial court's discretion and requires the expert testimony excluded); *State v. Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, ¶ 54-55 (exclusion of expert testimony is the only remedy provided for under Crim.R. 16(K)).

{¶ 57} In a footnote, the separate opinion finds that the state's noncompliance with Crim.R. 16(K) was not prejudicial because the defense had a copy of Dr. McPherson's expert report from the first trial. It is this writer's opinion, that it is irrelevant whether the defense was in possession of Dr. McPherson's expert report that she authored in preparation for the first trial because this was a new and separate trial and she was testifying on behalf of the state. Crim.R. 16(K) does not qualify or exempt either the state or the defense from its mandated requirements merely because the party may have in its possession a prior expert report.

{¶ 58} Moreover, because this was a *new* trial and Dr. McPherson was *now* testifying as a *state's witness*, a new report could have been weighted differently to now coincide with her testimony in the second trial — causing the defense to seek a rebuttal expert. In fact, when the defense objected to Dr. McPherson's testimony because the state had not furnished an expert report, counsel stated:

> But that expert report you are referencing that we provided from the last trial does not include the information upon which you are inquiring and it is completely opposite to what you are inquiring.

(Tr. 602.) The state rebutted that the testimony that Dr. McPherson was now testifying to was information that the prosecutor "inquired to at the last trial, so you can't say you're surprised by it. You sat through the last trial and you heard her testify." (Tr. 603.)

{¶ 59} In *Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, the Supreme Court held that trial court erred in admitting expert opinion testimony on topics that were not set forth in a written report prepared in compliance with Crim.R. 16(K). The purpose of the rule is "'to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report.'" *Id*. at ¶ 48, quoting *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 55. *See also Fowler* at ¶ 40 (allowing testimony beyond the scope of the expert report may have hampered the defense and improperly bolstered the child victim's credibility).

{¶ 60} Accordingly, what occurred here at trial is exactly what the purpose behind the 2010 revisions to Crim.R. 16 were intended to prevent — unfair surprise that materially prejudices the defense. Pursuant to Crim.R. 16(K), an expert testifies in accordance with her previously disclosed report; the expert does not testify in accordance with prior trial testimony. In this case, the state utilized an undisclosed expert report and combined it with prior trial testimony to circumvent the strict mandates of Crim.R. 16.

**{¶ 61}** Furthermore, even if Crim.R. 16(K) allows for this tactical maneuver, the state's eleventh-hour addition of Dr. McPherson was not in compliance with Crim.R. 16's 21-day timeframe. The Ohio Supreme Court made it clear in *Boaston* that

> [t]he plain language of Crim.R. 16(K) expressly provides the consequence for failing to disclose an expert's report as required: "Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." Crim.R. 16(L)(1) implicitly acknowledges this remedy: "The trial court may make orders regulating discovery not inconsistent with this rule." And while Crim.R. 16(K) confers some measure of discretion on trial judges, it is limited to modifying the 21-day requirement "for good cause shown, which does not prejudice any other party."

*Boaston* at ¶ 55.

**{¶ 62}** In this case, the state did not seek to extend the timeframe under Crim.R. 16 and, in fact, did not advise the court that it supplemented its witness list until the day that trial was scheduled to begin. This writer is not persuaded by the state's claim that it did not inform defense counsel of its intention to call Dr. McPherson as a state's witness until it found out that she was not going to be called as a defense witness. Even if the state could have used a previously retained defense witness as its own expert, there was nothing to preclude the state from contacting defense counsel well before the second trial was held to discuss expert witnesses or to have an expert report prepared. The state chose not to do either. Instead, the state supplemented its witness list on the day trial was set to begin, February 24, 2020, and defense counsel was unaware of the state's plan until at least that date, in violation of the both the letter and the intent of Crim.R. 16.

{¶ 63} The state's violation of Crim.R. 16(K) is further exacerbated by the fact that Dr. McPherson was not presented or qualified as an expert for the jury. The state admits it used Dr. McPherson as an expert, yet it failed to present her as such for the jury. We are cognizant that the Ohio Supreme Court has held that "no plain error occurs when the state fails to formally tender an expert." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 124. But in this case, our review is not for plain error. Moreover, not only did the state fail to formally tender Dr. McPherson as an expert, the court never qualified Dr. McPherson as an expert witness.[3]

{¶ 64} The parties do not dispute that Dr. McPherson is an expert in the field of forensic psychology and is trained in the field of interviewing techniques with individuals in sex abuse cases. Although she had already been qualified as an expert

---

[3] *Compare* defense counsel's actions in qualifying its expert witness, Dr. Leo. After asking Dr. Leo about his extensive background and qualifications, defense counsel queried:

Defense: Dr. Leo, are you regarded as a leader if not the leading researcher in your field?

Dr. Leo: I think I'm just the oldest.

Defense: Your Honor, at this time, I'd like to offer Dr. Leo as an expert witness in the general sciences of social psychology and criminology and the specific study and practice of police interrogations, psychological coercion, and the making of false statements, admissions, and confessions.

State: I have no objection to him being found as an expert in his field of study, Your Honor.

Court: Thank you. He will be designated an expert in that area of social sciences and confessions.

in the first trial, this trial was a *separate trial* and *must* be treated as such. While defense counsel, who retained Dr. McPherson in the first trial, does not dispute her qualifications as an expert, this writer does not find that to be a determinative factor.

{¶ 65} Evid.R. 702 governs the admissibility of expert testimony. A witness may testify as an expert if all of the following apply: (1) the witness's testimony relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (2) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and (3) the witness testimony is based on reliable scientific, technical, or other specialized information. Evid.R. 702.

{¶ 66} The purpose of expert testimony is to assist the trier of fact in determining a fact, issue, or understanding the evidence. *In re Leska*, 8th Dist. Cuyahoga No. 63417, 1993 Ohio App. LEXIS 1314 (Mar. 4, 1993). Evid.R. 702 "is rooted in the fact that the jury is unable to draw proper inferences from the facts in certain situations. An expert witness, however, is qualified to arrive at such conclusions by reason of his or her expertise in a particular field." *State v. Campbell*, 1st Dist. Hamilton Nos. C-010567 and C-010596, 2002-Ohio-11432, ¶ 31.

{¶ 67} The state did not request that Dr. McPherson be qualified as an expert witness, and the court never classified her in that manner. During one of defense counsel's objections, defense counsel noted as much, stating: "He [the prosecutor] is using her as an expert. He hasn't established her [sic] that she's an expert. He's asking her [sic] for her to offer opinions." (Tr. 600.) The prosecutor did not dispute

that Dr. McPherson was testifying as an expert witness, but instead replied that defense counsel already had Dr. McPherson's report from the first trial.

{¶ 68} Clearly, Dr. McPherson was not testifying as a lay witness because she had no firsthand knowledge of the subject of her testimony. She never interviewed C.W., and therefore, her opinion could not have been one "that a rational person would form based on the observed facts" under Evid.R. 701.

{¶ 69} Rather, Dr. McPherson testified based on her review of the interviews conducted by others with C.W. For example, she opined that the police officer who interviewed C.W. had not received training in interviewing children in sex abuse cases and that the officer's interview of C.W. was not a quality forensic interview. She told the jury that based on her knowledge of disclosures of sexual abuse, it is important for an interviewer to ask questions of a child in the correct way and that time and memory may have an effect on a child's disclosure of sexual abuse. Additionally, Dr. McPherson testified regarding a three-year-old's understanding of sexual activity.

{¶ 70} Accordingly, the state sought to present Dr. McPherson as an expert yet failed to tender her as an expert to the jury. Without qualifying Dr. McPherson as an expert, it was improper for the state to ask the jury to draw certain inferences based on her testimony. This failure is compounded by the state's reliance on Dr. McPherson's testimony to persuade the jury that C.W.'s disclosure to his parents was, in fact, the most reliable. Accordingly, based on the forgoing, even if the state was permitted to call a defense-retained expert, the state violated Crim.R. 16(K) and

therefore, should not have been permitted to present Dr. McPherson as its expert witness.

### 4. Prejudicial Error

{¶ 71} Having found that the trial court erred in allowing Dr. McPherson's testimony, we must determine whether that error is harmless. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, the state "bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In most cases, in order to be viewed as "affecting substantial rights," "'the error must have been prejudicial.'" (Emphasis deleted.) *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *Olano* at 734. Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24-25.

{¶ 72} In *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, the Ohio Supreme Court reiterated the three-part analysis established previously in *Morris* to guide appellate courts in determining whether the erroneous admission of evidence affected the defendant's substantial rights so as to require a new trial or whether the admission of that evidence was harmless error under Crim.R. 52(A):

First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. * * * Second, it must be determined whether the error was not harmless beyond a reasonable doubt. * * * Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

*Harris* at ¶ 37, citing *Morris* at ¶ 27-29.

{¶ 73} In addition, the conduct of the prosecutor "may combine with an evidentiary error to cause greater impact." *Morris* at ¶ 31 (finding state's use of gruesome slides during the penalty phase appealed to the jury's emotions and prejudiced the defendant). "[B]latent prejudice may override even a strong case and require a new trial." *Id*. at ¶ 32.

{¶ 74} Although the separate opinion does not find an error in permitting Dr. McPherson to testify in general, the panel agrees that blatant prejudice occurred in this case because the state elicited testimony from Dr. McPherson that she was retained by the defense and then repeatedly used this information during its closing argument as an attempt to bolster her testimony. These statements are not harmless beyond a reasonable doubt when the case hinges on a credibility contest amongst witnesses.

{¶ 75} During direct examination, the state asked Dr. McPherson how she became involved in this case. Dr. McPherson replied, "I was retained by the defense." (Tr. 584.) During closing arguments, the state again highlighted that the defense had retained Dr. McPherson:

Well, you also learned from a child psychologist, Dr. Sandra McPherson, who, you know, came out and testified — she was actually retained by the defense, so she's, you know, not here — well, she's here

to educate you. And I called her as a witness, even though she was retained by the defense, because I felt her information was extremely important for you to consider as you deliberate this case.

{¶ 76} The fact that Dr. McPherson was first retained by the defense has no relevance to any issue before the jury. Additionally, identifying Dr. McPherson as a defense-retained witness serves only to invite the jury to give undue weight to her opinion. Indeed, that characterization forces the defendant to involuntarily "vouch for" the credibility of an expert that they have decided not to call as a witness. *See United States v. Walker*, 910 F. Supp. 861, 864 (N.D.N.Y. 1995).

{¶ 77} That is precisely what happened here. In an attempt to triage this disclosure, defense counsel was compelled to acknowledge that Dr. McPherson was retained by the defense and then attempted to explain to the jury why it did so but did not call the doctor as a witness. (Tr. 614; 959.) The state forced the defense into a position that risked unfairly neutralizing the effect of any otherwise proper impeachment of the witness that the defense might undertake.

{¶ 78} As noted in *Walker* at *id.*:

[I]n criminal proceedings much may turn on the jury's assessment of the candor and credibility of a defendant's attorneys. The jury makes that assessment unfamiliar with the adversary process, a defense attorney's duties in fully exploring the government's case against his [or her] client, and the role an attorney plays in developing and presenting expert testimony. To permit the government to stress that the defense was in possession of an expert's negative conclusions but declined to place those conclusions before the jury raises a real danger of the jury concluding that the defense had improperly attempted to suppress adverse facts or opinions.

{¶ 79} The import of Dr. McPherson's testimony cannot be overstated. The alleged victim was three years old when the incident occurred and seven years old

when he testified at trial.  There were numerous inconsistencies with his testimony, including who was present and what transpired.  The child also failed to disclose the alleged abuse during multiple interviews, indicating to police that Ferricci was "just going tinkle."  Ferricci testified, denying the allegations, and contended he only confessed to the crime due to overbearing, coercive interrogation tactics.

{¶ 80} Dr. McPherson's testimony served to bolster the child's testimony and explain why his initial disclosure to his mother might differ and should be given more weight or believed over that of the child's subsequent disclosures.  To illustrate this point, the state questioned Dr. McPherson about false disclosure and her previous testimony regarding the percentage of children who falsely disclose abuse.

{¶ 81} The state queried:

State:  Have you testified to lower numbers than 10 percent in the neutral setting, closer to 2 or 3 percent and 6 percent in the contested settings?  In this case itself, I believe you testified in that range.

Dr. McPherson:  Well, my memory and my reading of the current research that's been done is that the more common figure is closer to 2 percent than not, but there have been some studies upwards, up as high up as 10 percent.  But the figures that are associated with the more difficult cases that can occur in a setting where someone is trying to get a child to say something and has succeeded in doing so can be * * * higher. * * *

State:  And that's all affected by the context of the disclosure?

Dr. McPherson:  Right.  Context is an extremely important variable.

State:  How would you classify the context in this disclosure where the mom just asked her kid how was Mud Day?

Dr. McPherson: Yeah.  In making the assumption that that's what mom did, and I believe it was something similar to that, it's the usual thing * * * That the likelihood of the child saying something like someone put

their penis in the child's mouth is pretty low unless it actually happened.

(Tr. 598.)

{¶ 82} Dr. McPherson further testified that unless a three-year-old child had had an unusual experience, "they would not understand that placing a penis in the mouth of another person is an act that is known to be part of sexual repertoire of adults. They would not know that." (Tr. 605.)

{¶ 83} In *State v. Walls*, 2018-Ohio-329, 104 N.E.3d 280 (6th Dist.), the Sixth District found reversible error when the trial court allowed an expert in child sex abuse to testify beyond the scope of his written report. The state provided the expert report to the defense prior to trial but failed to disclose that the expert witness intended to testify about matters outside of the report, including sexual grooming, delayed disclosure, or recantation; did not identify the studies upon which expert relied in forming his opinions; and did not disclose his opinion that one of the victims was a "troubled young lady with some serious psychological issues" who likely had been sexually abused in the past. *Id.* at ¶ 38. The court performed a harmless-error inquiry and found that the appellant's substantial rights had been violated. The court noted that the state intended for the expert's testimony to carry great weight with the jury, that there was no physical evidence in the case, and that the state emphasized the improper evidence by repeatedly referencing the expert's testimony in its closing argument. *Id.* at ¶ 45–51.

{¶ 84} In *Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, the First District found reversible error where the state utilized a detective as an expert without submitting an expert report in contravention of the plain language of Crim.R. 16(K). *Id.* at ¶ 20. The court concluded that the error was not harmless because the state intended the detective's testimony "'to carry great weight with the jury,'" *id.* at ¶ 21, quoting *Walls* at ¶ 45, by focusing on the detective's extensive experience and training to bolster the victim's credibility. The court found the state's use of the detective's testimony in this manner extremely troublesome because without it, "the jury might have considered the lack of physical evidence and the victim's credibility in a different light." *Id.* at ¶ 22. The court found the state's actions even more offensive in its use of the detective's testimony during closing arguments. During closing argument, the state repeatedly referred to the defendant as a "predator" or "wolf." The First District noted the increase in instances where prosecutors have engaged in tactics of name-calling and invading the jury's realm by rendering personal beliefs. *Id* at ¶ 30-31; *see also State v. Walker*, 8th Dist. Cuyahoga No. 110741, 2022-Ohio-1238 (prosecutor's comments to end the cycle of violence invaded jury's province). Although the First District found the prosecutor's name-calling reprehensible, it found the conduct even more egregious and amounted to plain error when coupled with the state's use of the detective's testimony during closing. "When the jury's determination of guilt rests solely on the question of which testimony they believed, the victim's or [the defendant's], the prosecutor's conduct (denigrating the defendant, calling him a 'wolf' and a

'predator,' vouching for the state's witnesses) compounded the problems inherent in admitting [the detective's] testimony). *Id.* at ¶ 39.

{¶ 85} Likewise, in this case, the state intended for Dr. McPherson's testimony to carry great weight with the jury and wanted the jury to rely on her expert opinion when analyzing C.W.'s credibility and testimony at trial. Dr. McPherson testified that she had been licensed since 1976 and was trained in the forensic interviewing of child sex assault victims. She was the only expert — in fact, the only witness — to do so. Dr. McPherson opined that a child of C.W.'s age would not understand that the act of placing a penis in the mouth of another person is part of adult sexual repertoire unless the child had had an unusual experience. Furthermore, Dr. McPherson asserted that the likelihood that C.W. would have said "something like 'someone put their penis in the child's mouth' is pretty low unless it actually happened."

{¶ 86} The state repeatedly referenced Dr. McPherson's testimony in closing argument:

> And what did [Dr. McPherson] tell you? She talked about how a three-year-old, a three-year-nine-month-old child, it is not in their development. It isn't in their knowledge set to have the concept of sexual activity or penises in the mouth unless it is introduced there by some outside source, right? And what is the outside source in this case? It is the fact that Michael Ferricci put his penis in [C.W.'s] mouth.
>
> So she also talked about disclosures of sexual abuse by children, how there are different ways that disclosures occur in different settings. And she talked about how important it is to question children appropriately; how you can't implant ideas into a child's mind because a child could just start parroting back things you're saying.

And I agree 1,000 percent with Dr. McPherson. She's right, it's important because we want to have accurate information. We want to have information we can rely on in the most important of our affairs when we make these decisions.

(Tr. 946-947.)

{¶ 87} The state referenced Dr. McPherson's opinion that C.W.'s initial disclosure to his mother was "an extremely reliable circumstance" that was free from any "dangers of corrupting the information." (Tr. 947.) Likewise, the state implored the jury to rely on Dr. McPherson's expert opinion when analyzing C.W.'s credibility and testimony at trial:

I asked you to critically analyze every bit of information you heard in this case. Critically analyze it and assess it and understand it based on what you were educated by, frankly, [Dr.] McPherson.

[C.W.] has no conception at three years nine months, of a penis in his mouth. Not [the prosecutor's] words; Dr. McPherson's words.

(Tr. 970-971.)

{¶ 88} Additionally, there was no physical evidence in this case that Ferricci committed rape. The state's case largely hinged on whether the jury believed the state's witnesses over the defense witnesses. Dr. McPherson's testimony, the state's actions in emphasizing her testimony, and the state's inappropriate comments that the defense retained Dr. McPherson, all lead this court to conclude that there is "a reasonable possibility that the testimony contributed" to Ferricci's conviction. *See Morris*, 141 Ohio St. 3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, at ¶ 28.

{¶ 89} Based on the facts and circumstances of this case, the error was not harmless. A finding of harmless error is not justified if the case is a "credibility

contest" between the victim and the defendant and no independent evidence exists. *State v. Burrell*, 89 Ohio App.3d 737, 746, 627 N.E.2d 605 (9th Dist.1993). Allowing into evidence testimony that the state's expert witness was originally retained by the defense unfairly prejudiced Ferricci's constitutional right to a fair trial. It put the defense in the position of cross-examining a witness it had previously retained and left defense counsel in the position of having to justify to the jury why the state called the witness instead of the defense. The error in allowing the admission of Dr. McPherson's testimony became unduly prejudicial by the state's repeated statements in closing arguments that the doctor had been retained by the defense. The improper testimony and comments effectively permitted the jury to infer not only that the defense was attempting to withhold damaging evidence, but that Dr. McPherson's testimony and, in turn, C.W.'s allegations against Ferricci, were deserving of more credibility. We agree with appellant's argument that this led to impermissible burden shifting. Essentially, the state's comments that its own witness was previously retained by the defense implied that the defense had an obligation to put forth evidence but instead hid it from the jury. To do so was one of the many errors that, when viewed together, deprived Ferricci of a fair trial.

{¶ 90} If the state is permitted to call defense-retained experts to testify against the defendant, defense attorneys would be deterred from seeking out such experts and developing work product on behalf of their clients. Moreover, in no event should the court allow the state to identify the witness as one that was previously retained by the defendant, as occurred in this case. Accordingly,

Ferricci's first assignment of error is sustained and his conviction is reversed. The remaining assignments of error, also challenging evidentiary rulings and the evidence presented at trial, are hereby rendered moot. *See* App.R. 12(A)(1)(c)

{¶ 91} Judgment reversed; case remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION);
EILEEN T. GALLAGHER, J., CONCURS WITH THE SEPARATE CONCURRING IN JUDGMENT ONLY OPINION

MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY:

{¶ 92} I respectfully concur in judgment only. While I agree with the outcome reached by the lead opinion, I disagree with the lead opinion's holding that the work-product privilege (or the related attorney-client privilege) prohibited the state from calling Dr. McPherson to testify in the new trial because she was retained by the defense as its expert in the first trial. In my view, the defense waived the work-product privilege when it called Dr. McPherson to testify in the first trial but

no longer retained her as its expert in the new trial. Therefore, the trial court did not abuse its discretion in permitting the state to call Dr. McPherson to testify in the new trial. I agree, however, with the lead opinion's determination that appellant was substantially prejudiced by the state's improper elicitation of Dr. McPherson's testimony that she was originally retained by the defense and the error was compounded by the state's repeated allusions to that information at its closing argument.

**Work-Product Doctrine**

{¶ 93} The work-product doctrine "protects the attorney's mental processes in preparation of litigation, so that the attorney can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Watson v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 99932, 2014-Ohio-1617, ¶ 29, citing *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55. The doctrine initially arose in the civil context but has long been extended to the criminal context. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

{¶ 94} Crim.R. 16(J) incorporates the work-product doctrine and explicitly protects material subject to the work product protection from disclosure in criminal cases. *State v. Glenn*, 165 Ohio St.3d 432, 2021-Ohio-3369, 179 N.E.3d 1205, ¶ 17. Crim.R. 16(J) states, in pertinent part:

The following items are not subject to disclosure under this rule:

> Materials subject to the work product protection. Work product includes, but is not limited to, reports, memoranda, or other internal documents made by the prosecuting attorney or defense counsel, or their agents in connection with the investigation or prosecution or defense of the case[.]

Moreover, "the work product doctrine protects material prepared by agents for the attorney as well as those prepared by the attorney * * *." *State v. Fairchild*, 2d Dist. Darke No. 1481, 1999 Ohio App. LEXIS 4012 (Aug. 27, 1999). In the context of Crim.R. 16, the courts have treated an expert as an agent of the prosecutor or defense counsel. *See, e.g., State v. Kopchak*, 5th Dist. Muskingum No. CT2017-0036, 2018-Ohio-1136, ¶ 23 (addressing the propriety of the state's use of a defense-retained expert, the court explained that it was necessary that the work-product doctrine protected material prepared by agents for the attorney as well as those prepared by the attorney).

**Issue of First Impression**

{¶ 95} The highly unusual circumstances of this case appear to present a novel issue of first impression: whether an expert retained by defense counsel *who testified for the defense* in a trial should be precluded by the work-product doctrine (or the related attorney-client privilege) from testifying for the state in a new trial when the expert is no longer retained by the defense.[4]

---

[4] The transcript reflects that, at a side bar, the prosecutor represented to the trial court that Dr. McPherson had told the prosecutor that she has not talked to the defense since the first trial and there has been no communication between her and the defense. (Tr. 602.)

**Extension of Work-Product Protection to Expert's Testimony**

{¶ 96} On its face, Crim.R. 16(J) does not speak to the issue of whether the state can call a defense-retained expert as a state witness. Crim.R. 16 regulates the process of discovery and the work-product doctrine typically applies to documents rather than oral testimony. *Vore v. Warden*, S.D.Ohio No. 1:13-cv-800, 2014 U.S. Dist. LEXIS 174175, 13 (Dec. 17, 2014).

{¶ 97} However, some courts have extended the work-product protection incorporated in Crim.R. 16 to the testimony of an expert retained by the defense counsel, holding that the use of a defense-retained expert by the state was error pursuant to the work-product doctrine (or the related attorney-client privilege). *Kopchak*, 5th Dist. Muskingum No. CT2017-0036, 2018-Ohio-1136, at ¶ 24 (permitting the state to call a defense-retained DNA expert to present evidence cumulative to its own DNA expert was error); *Fairchild*, 2d Dist. Darke No. 1481, 1999 Ohio App. LEXIS 4012, 15 (the use of testimony of a defense-retained fingerprint expert by the state contravened the work-product doctrine); and *State v. Delaney*, 10th Dist. Franklin No. 92AP-1408, 1993 Ohio App. LEXIS 4310 (Sept. 2, 1993) (the admission of a handwriting expert's testimony for the state was in contravention of appellant's attorney-client privilege). *See also State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992) ("the right to the effective assistance of counsel includes access to defense experts, and the state's use of such witnesses

could infringe an accused's attorney-client privilege").[5]   In these cases, the experts were retained by defense counsel but were *not* called by the defense to testify at the trial.  The court held that allowing such experts to testify for the state in its case in chief contravened the work-product privilege.

**Waiver of Work-Product Privilege**

{¶ 98} In the instant case, however, the defense itself had called Dr. McPherson to testify on its behalf, but chose not to call the expert in the new trial. By voluntarily calling Dr. McPherson in the first trial, the defense published the expert's opinions and waived any work-product protection.  *See, e.g., DMS Constr. Ents., L.L.C. v. Homick*, 8th Dist. Cuyahoga No. 109343, 2020-Ohio-4919, ¶ 30 ("work product protection belongs to the attorney and an attorney's actions can waive work product protection, including by voluntary disclosure of information to an adverse party").  The expert testifying for the defense distinguishes the instant case from *Kopchak* and *Fairchild*, where the expert was not called by the defense to testify and there was no waiver of the work-product protection.  I would also note

---

[5] *But see State v. Freshour*, 4th Dist. Pickaway No. 83 CA 32, 1986 Ohio App. LEXIS 6092, 23 (Mar. 19, 1986) (Crim.R. 16 only regulates the process of discovery and it "does not prevent the state from engaging in its own investigation and calling an expert previously hired by an accused on direct examination"); and *State v. Webb*, 9th Dist. Summit No. 8546, 1977 Ohio App. LEXIS 9076, 7 (Jan. 5, 1977) ("[O]nce defense counsel stated he did not intend to call the handwriting expert as a witness, any confidentiality concerning the expert's reports or statements was lost.  At that point, the expert could no longer be either an agent of [defendant's] attorney or a prospective witness.  The state was, consequently, free to call the expert as its witness.").

that, while appellant asserts work-product protection as grounds for the exclusion of Dr. McPherson as the state's expert witness, Dr. McPherson was not retained by the defense as its expert in the new trial.

{¶ 99} I recognize that courts have remarked on the chilling effect of allowing the state to call a defense-retained expert: "if the State were permitted to call defense retained experts to testify against the defendant, defense attorneys would be deterred from seeking out such experts and developing work product on behalf of their clients." *Kopchak* at ¶ 22, quoting *Fairchild* at 6. *See also Freshour*, 4th Dist. Pickaway No. 83 CA 32, 1986 Ohio App. LEXIS 6092 (Grey, J., dissenting) ("[a]llowing the defendant's expert witness to be used by the prosecution has an undeniably chilling effect of the right to competent counsel. Counsel's ability to independently investigate the case is hampered by the threat that what he finds will be used against his own client"). The chilling effect noted by these courts, however, is minimal under the circumstances of this case, where the defense itself had called the expert to present her report and opinions in the prior trial.[6]

---

[6] Regarding the requirement of Crim.16(K), I agree with the lead opinion that *State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, required the exclusion of Dr. McPherson's testimony that went beyond the scope of the written report. In that case, the expert's report was provided to the defense but the report did not contain all the opinions the state elicited from the expert. The Supreme Court of Ohio held that it was error to admit the expert's testimony on the topics not set forth in the expert's report. Generally, "the purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report." *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 55. Here, while the defense would be hard pressed to claim surprise by its own expert's report, the state elicited testimony from

**Prejudice**

{¶ 100} While I believe neither Crim.R. 16 nor the case law precedent prohibits the state from presenting the testimony of Dr. McPherson, I agree, however, with the majority regarding the two questions we sua sponte raised in connection with appellant's first assignment of error: (1) did the trial court err when it allowed into evidence testimony that the defendant retained Dr. McPherson, and (2) was it error for the state to comment during closing argument on which party retained Dr. McPherson?

{¶ 101} During its case in chief, the state elicited from Dr. McPherson information that she was originally retained by the defense counsel.[7] This information was arguably irrelevant to whether appellant was guilty of the offense charged and therefore inadmissible pursuant to Evid.R. 402. In any event, any purported probative value of the information is substantially outweighed by the danger of prejudice. Evid.R. 403(A). This testimony served to imply the defense was attempting to withhold unfavorable evidence from the jury and improperly

---

Dr. McPherson on the topic of the likelihood of false initial disclosures, which was beyond the scope of her report. Therefore, in my view, while it was harmless error for the trial court to allow Dr. McPherson to testify when her report was already in the defense's possession, her testimony on the likelihood of the child's initial disclosure being false went beyond the scope of her written report and its admission was error pursuant to *Boaston*. I note, however, the issue of whether the state complied with *Boaston* was not specifically raised by Ferricci on appeal.

[7] While the defense objected to the state's calling Dr. McPherson as its witness, the transcript reflects that the defense did not raise a specific objection when she testified that she was involved in this case because she was retained by the defense counsel.

bolstered the credibility of Dr. McPherson's opinion elicited by the state that the initial disclosure the child made to his mother would likely be the most reliable version of events.

{¶ 102} The harmful effect of the prejudicial testimony was exacerbated by the state's repeated allusions to it during the state's closing argument; the state told the jury to place significance on the fact that the expert was originally retained by the defense counsel and it implored the jury to afford more credibility to her testimony regarding the child's initial disclosure based on that fact.

{¶ 103} Therefore, while the defense waived the work-product privilege and the state is not precluded from calling Dr. McPherson to testify at the new trial, the state's improper elicitation of the fact that she was retained by the defense and exploitation of that fact at its closing argument resulted in substantial prejudice to appellant under the circumstances of this case, where there was no corroborating physical evidence or eyewitnesses and the question of appellant's guilt hinged entirely on the credibility of the child's initial disclosure. For all the foregoing reasons, I concur in judgment only.