[Cite as *State v. Kopchak*, 2018-Ohio-1136.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| TODD A. KOPCHAK | : | Case No. CT2017-0036 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. CR2016-0250

JUDGMENT:                         Affirmed

DATE OF JUDGMENT:                 March 26, 2018

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

D. MICHAEL HADDOX                         JEFFERY M. BLOSSER
Prosecuting Attorney                      765 South High Street
By: GERALD V. ANDERSON II                 Columbus, OH 43206
Assistant Prosecuting Attorney
27 North Fifth Street, P. O. Box 189
Zanesville, OH  43702-0189

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Todd A. Kopchak appeals the May 18, 2017 judgment of conviction and sentence of the Court of Common Pleas, Muskingum County, Ohio. Plaintiff-Appellee is the state of Ohio.

## STATEMENT OF THE CASE

{¶ 2}   On August 3, 2016, the Muskingum County Grand Jury returned an indictment charging appellant with two counts of rape pursuant to R.C. 2907.02(A)(1)(c), felonies of the first degree. A jury trial began on April 18, 2017, at the conclusion of which appellant was convicted as charged. Appellant was subsequently sentenced to eight years on each count and ordered to serve the sentences concurrently.

{¶ 3}   On appeal, appellant raises a discovery issue. A recitation of the facts which led to the charges is therefore not necessary to our disposition of this appeal. The relevant facts are as follow:

{¶ 4}   The Bureau of Criminal Investigation (BCI) conducted DNA analysis of bodily fluids found on an article of appellant's clothing, a standard submitted by appellant, and swabs from the victim's rape kit. At trial, the BCI criminalist who conducted the testing testified as to his findings.

{¶ 5}   Appellant was initially represented by Attorney Mark Kaido. Attorney Kaido retained Dr. Theodore Kessis, an expert in the area of forensic DNA analysis to perform an independent analysis of the results obtained by the BCI. Kessis did not perform additional testing of the evidence. Rather, he reviewed the procedures and methods utilized by the BCI. In a one-page letter dated January 11, 2017, Kessis opined the BCI procedures were accurately and reliably conducted.

{¶ 6}  Appellant subsequently fired Attorney Kaido and hired Attorney Jeffery Blosser. On April 5, 2017, Attorney Blosser filed a response to the state's request for discovery. Item 4 of the response stated "The Defendant does not intend to call an expert witness in this matter as set forth in Crim.R. 16(K)."

{¶ 7}  On April 10, 2017, following an in-chambers pretrial which is not a part of the record, Attorney Blosser filed the one-page letter from Kessis with the trial court, under seal, for determination by the court as to whether or not the defense was required to provide the letter to the state.

{¶ 8}  On April 11, 2017, a hearing was held on the matter. The state argued Attorney Kaido had stated he had hired an expert witness, it believed Kessis would be an expert witness, and that therefore it was therefore entitled to the letter prepared by Kessis. Attorney Blosser, however, indicated he had no intention to call Kessis as a witness. The trial court ordered defense counsel to provide the letter to the state.

{¶ 9}  At trial, over the objection of defense counsel, the state called Kessis to testify in its case-in-chief. Kessis testified that the procedures and methods utilized by the BCI were accurately and reliably carried out. He further testified that the findings were consistent with the alleged facts surrounding the rape. Finally, again over defense counsel's objection, Kessis' letter was admitted into evidence.

{¶ 10} Appellant brings this appeal to challenge the trial court's decision compelling him to disclose to the state the letter authored by Kessis. He raises two arguments:

I

{¶ 11} "THE TRIAL COURT ERRED IN ORDERING THE DISCLOSURE TO THE STATE OF A CONSULTING EXPERT WITNESS FOR THE DEFENSE IN VIOLATION OF CRIM. R. 16(J)."

II

{¶ 12} "THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF A CONSULTING EXPERT FOR THE DEFENSE AND HIRED BY THE DEFENDANT'S PREVIOUS COUNSEL BY THE STATE WHERE THE TESTIMONY'S PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY THE NEEDLESS PRESENTATION OF CUMULATIVE EVIDENCE."

I, II

{¶ 13} Because they are interrelated, we address appellant's assignments of error together.

{¶ 14} In his first assignment of error, appellant argues pursuant to Crim.R. 16(J)(1), the trial court erred in ordering the disclosure to the state of the letter authored by Kessis, his consulting expert. In his second assignment of error, appellant argues the trial court erred in permitting the state to call a defense-retained consulting expert when the expert's testimony was needlessly cumulative pursuant to Evid.R. 403(B). We agree with both arguments, but under the facts of this case, find the errors harmless.

{¶ 15} An appellate court's standard of review on evidentiary and discovery matters is an abuse of discretion. *State v. Elliott*, 5th Dist. Tuscarawas No. 2007AP070044, 2008-Ohio-5673 ¶ 23. An abuse of discretion is more than an error of

law and implies that the trial court acted "unreasonably, arbitrarily or unconscionably." *Blackmore v. Blackmore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} Crim.R 16 governs criminal discovery and inspection. Crim.R. 16(H) addresses a defendant's obligation to provide the prosecution with reciprocal discovery. The rule states in relevant part:

> * * * The defendant shall provide copies or photographs, or permit the prosecuting attorney to copy or photograph, the following items related to the particular case indictment, information or complaint, and which are material to the innocence or alibi of the defendant, or are intended for use by the defense as evidence at the trial, or were obtained from or belong to the victim, within the possession of, or reasonably available to the defendant, *except as provided in division (J) of this rule*:
>
> (1) All laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings or places;
>
> (2) Results of physical or mental examinations, experiments or scientific tests;
>
> (3) Any evidence that tends to negate the guilt of the defendant, or is material to punishment, or tends to support an alibi. However, nothing in this rule shall be construed to require the defendant to disclose information that would tend to incriminate that defendant;
>
> (4) All investigative reports, *except as provided in division (J) of this rule*;

(5) Any written or recorded statement by a witness in the defendant's case-in-chief, or any witness that it reasonably anticipates calling as a witness in surrebuttal.

{¶ 17} Emphasis added.

{¶ 18} Crim.R. 16(J) addresses items which are not subject to disclosure. These items include materials "subject to work product protection," including but not limited to "reports, memoranda, or other internal documents made by the prosecuting attorney or defense counsel, *or their agents in connection with the investigation or prosecution or defense of the case * * *"* Crim.R. 16(J)(1). Emphasis added.

{¶ 19} Crim.R. 16(K) addresses expert witness reports. That section provides: An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 20} The staff note for Crim.R. 16(K), however, specifically states the division does not require disclosure of "* * * written reports of consulting experts who are not being called as witnesses."

{¶ 21} The state argues that appellant's first attorney requested supplemental discovery from the state specifically for the purpose of providing the same to Kessis so

that he could write a report. The state further argues appellant's first attorney advised the state of a document composed by Kessis detailing his review and analysis of the BCI's procedures and methods. None of this, however, changes the fact that Kessis' report to defense counsel was not discoverable if the counsel representing appellant at trial had no intention to call Kessis as a witness. Whatever strategy appellant's first attorney had in mind had no bearing on the trial strategy of appellant's second attorney.

{¶ 22} In *State v. Fairchild,* 2nd Dist. Darke App. No. 1481, 1999WL9424491 (Aug. 29, 1999) *6, appellant raised an ineffective assistance of counsel claim because the state was permitted to call a defense-retained expert in its case-in-chief without objection from the defense. Although the court ultimately found appellant had failed to establish prejudice as required to meet the second prong of an ineffective assistance of counsel claim, the Second District Court of Appeals nonetheless found the admission of the testimony  a "contravention of appellant's attorney-client privilege" and further noted:

> * * *[W]e believe the use of such testimony contravenes the work product privilege enjoyed by the defendant. We recognize that if the State were permitted to call defense retained experts to testify against the defendant, defense attorneys would be deterred from seeking out such experts and developing work product on behalf of their clients.

{¶ 23} Although appellant here does not specifically raise attorney-client privilege, *Fairchild* is nonetheless instructive as Crim.R.16 (J)(1) is designed to protect the attorney-client relationship. The realities of litigation in our adversary system, dictate that defense

counsel must often "* * * rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

{¶ 24}  We find the trial court's decision compelling the defense to disclose a letter from a consulting expert was error. We further find that permitting the state to call a defense-retained DNA expert to present evidence cumulative to its own DNA expert was error. We find, however, based on the evidence in this matter that these errors were harmless.

{¶ 25} In *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, the Ohio Supreme Court considered the applicable standard to determine harmless error where a criminal defendant seeks a new trial due to the erroneous admission of evidence under Evid.R. 404(B). The court summarized its analysis in the subsequent decision of *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37:

> Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A). *Id.* at ¶ 22-24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new

trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. *Id.* at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Id. at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

{¶ 26} *Id.* at ¶ 29, 33.

{¶ 27} The victim in this matter testified that appellant raped her digitally and vaginally. T. 282-283. Male specific Y-STR testing of the vaginal and perianal swabs from the victim's rape kit could not exclude appellant as the source of the male DNA present on the swabs.  A criminalist from the BCI testified that a statistic of 1 in 9000 is a strong statistic for Y-STR testing. The perianal swab resulted in a statistic of 1 in 1,786 and the vaginal swab produced a 1 in 2500 statistic. T. 231-233.

{¶ 28} DNA testing was also completed on a pair of shorts worn by appellant on the evening in question. Because the shorts appeared to be reversible, the crotch area of both sides of the shorts were tested. Each side of the shorts contained a mixture of DNA belonging to appellant and a second person. The statistical possibility that the DNA foreign to appellant could be anyone other than the victim was 1 in 25 billion, 60 million on one side of the shorts, and more than 1 in one trillion on the other side of the shorts. T. 253-254. The criminalist further testified that the DNA on one side of the shorts was 25% female and on the other side was 40% female and that this was a significant percentage to find on an item belonging to a male. T. 238.

{¶ 29} The forensic evidence in this case is strong, and the victim was able to provide the jury with a detailed account of the rape. After a thorough review of the record, we find the remaining properly introduced evidence overwhelmingly establishes defendant's guilt.

{¶ 30} Appellant's two assignments of error are overruled.

By Wise, Earle, J.

Gwin, P.J. and

Hoffman, J. concur.

EEW/rw 315