[Cite as *State v. Henthorne*, 2026-Ohio-86.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2024 CA 0031 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Richland County Court of Common Pleas, Case No. 2023-CR-0456N |
| CHAD E. HENTHORN, | Judgment: Affirmed in part; Reversed and Remanded in part |
| Defendant – Appellant | Date of Judgment Entry: January 9, 2026 |

**BEFORE:** Craig R. Baldwin; William B. Hoffman; Kevin W. Popham, Judges

**APPEARANCES:** JODIE M. SCHUMACHER, Prosecuting Attorney, MICHELLE FINK, Assistant Prosecuting Attorney, for Plaintiff-Appellee; BRIAN A. SMITH, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Chad E. Henthorn, appeals his conviction and sentence in the Richland County Court of Common Pleas. The appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   On June 22, 2023, the Richland County Grand Jury indicted the appellant for:

- Count One – Attempted Murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A);

- Count Two – Kidnapping in violation of R.C. 2905.01(A)(3);

- Count Three – Kidnapping in violation of R.C. 2905.01(A)(2);

- Count Four – Felonious Assault in violation of R.C. 2903.11(A)(1);

- Count Five – Felonious Assault in violation of R.C. 2903.11(A)(1);

- Count Six – Felonious Assault in violation of R.C. 2903.11(A)(1);

- Count Seven – Felonious Assault in violation of R.C. 2903.11(A)(1);

- Count Eight – Tampering with Evidence in violation of R.C. 2921.12(A)(1); and

- Count Nine – Tampering with Evidence in violation of R.C. 2921.12(A)(1).

{¶3} The appellant entered pleas of not guilty to all counts.

{¶4} On March 24, 2024, and May 7, 2024, prior to trial, the appellant filed two motions to view a psychological report on co-defendant Robert Virgili issued for purposes of his sentencing. The trial court denied both these motions.

{¶5} On May 7, 2024, the matter proceeded to a jury trial.

{¶6} At trial, evidence was presented that the victim, J.J., was contacted about performing electrical work and was transported to a residence in Richland County, Ohio. The victim identified the residence as the appellant's. Shortly after entering the appellant's garage, J.J. was struck over the head by the appellant's co-defendant, Robert Virgili. When J.J. tried to escape, the appellant closed the garage doors, preventing his exit.

{¶7} A video recording of the assault was played for the jury. The video showed the appellant leaving the garage during portions of the assault. Virgili choked the victim, verbally insulted him, and later switched to punching him. The video also showed Virgili carrying a clamp and chain. J.J. lost consciousness and later awoke with his wrists chained to his left ankle behind his back. When J.J. asked to be released, an object was shoved into his mouth.

{¶8} At some point, an individual other than Virgili or the appellant unchained the victim and instructed him to walk to a vehicle. The appellant then reentered the garage and threatened the victim with a crowbar. The victim was threated with a crowbar, hit with a crowbar and a heavy chain, choked, and restrained with a chain.

{¶9} Upon exiting the garage, J.J. encountered a woman walking her dogs and begged her to call 9-1-1. Members of the group grabbed J.J. and told the woman not to call anyone. The victim slid out of his jacket and ran, eventually encountering a man mowing his lawn, who called 9-1-1.

{¶10} The victim sustained a broken finger, three skull fractures, and two brain bleeds. His liver was lacerated in three places, his clavicle was broken, and he sustained bruising over the rest of his body. He spent five days in the hospital and required staples in his head. All injuries were consistent with the victim's account and the video evidence.

{¶11} Law enforcement recovered evidence showing the appellant resided at the location of the assault. Officers observed multiple puddles of blood in the garage and on various objects, as well as a video camera inside the garage. Evidence indicated an attempt had been made to clean blood from the garage floor. A heavy chain covered in blood was recovered.

{¶12} The recovered video showed the appellant installing the camera six minutes before the victim entered the garage. The appellant was observed looking toward the main garage door multiple times. The video depicted the appellant present at the beginning of the assault and showed Virgili striking the victim with a chain and forcing him headfirst into a workbench while the appellant stood nearby. The appellant stepped over

both men as Virgili choked the victim, then exited the garage and closed a smaller garage door, further preventing escape.

{¶13} Approximately fifteen minutes later, the video showed Virgili leaving the garage. The appellant then wrapped the victim's cell phone in a shirt, placed it on an anvil, destroyed it with a wrench, and placed the bundle into a wood-burner. The appellant also attempted to clean blood from the garage floor and surrounding items.

{¶14} After the assault, the appellant was present while J.M., the son of the owner of the camera that the appellant installed in the garage, was held at gunpoint and instructed to delete all the video evidence from his phone and email.

{¶15} The jury found the appellant guilty on Counts Three, Four, Six, Eight, and Nine, and not guilty on Counts One, Two, Five, and Seven.

{¶16} On May 15, 2024, the trial court sentenced the appellant to eleven to sixteen and a half years in prison on Count Three, eight years in prison on Count Four, thirty-six months in prison on Count Eight, and thirty-six months in prison on Count Nine. The trial court ordered that Counts Four and Six be merged for purposes of sentencing, with the State electing to proceed on Count Four. The trial court further ordered that the sentences for Counts Three and Four be consecutive, resulting in an aggregate prison term of twenty-five to thirty and a half years in prison.

{¶17} The appellant filed a timely notice of appeal and herein raises the following six assignments of error:

{¶18} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶19}** "II. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING BOTH APPELLANT'S MARCH 14, 2024 AND MAY 7, 2024 MOTIONS TO VIEW REPORT AND EVALUATION OF ROBERT VIRGILI, IN VIOLATION OF CRIMINAL RULE 16 AND APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

**{¶20}** "III. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE STATE TO COMMENT, DURING CLOSING ARGUMENT, ON APPELLANT'S DECISION NOT TO TESTIFY AT TRIAL IN VIOLATION OF BOTH APPELLANT'S RIGHT AGAINST SELF-INCRIMINATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

**{¶21}** "IV. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO THE STATE'S COMMENT, DURING CLOSING ARGUMENT, ON APPELLANT'S DECISION NOT TO TESTIFY AT TRIAL, AND TO MOVE FOR A MISTRIAL, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**{¶22}** "V. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO MERGE COUNT THREE WITH COUNT FOUR, APPELLANT'S CONVICTIONS FOR

KIDNAPPING AND FELONIOUS ASSAULT, AND COUNT EIGHT WITH COUNT NINE, APPELLANT'S CONVICTIONS FOR TAMPERING WITH EVIDENCE, AS ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25, IN VIOLATION OF APPELLANT'S RIGHT AGAINST DOUBLE JEOPARDY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**{¶23}** "VI. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW FOR IMPOSING A MANDATORY SENTENCE ON COUNT THREE, KIDNAPPING, WHERE THE CHARGE DID NOT MEET THE CRITERIA FOR MANDATORY SENTENCING PURSUANT TO R.C. 2929.13(F)."

**I.**

**{¶24}** In his first assignment of error, the appellant argues that his convictions are against the manifest weight of the evidence. We disagree.

**STANDARD OF REVIEW**

**{¶25}** Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 1997-Ohio-52. The Supreme Court of Ohio stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight

is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) Black's, *supra*, at 1594.

*Id*.

**{¶26}** The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id*.

"* * *[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review Section 60, at 191-192 (1978).

## ANALYSIS

{¶27} The appellant was convicted of being complicit in the kidnapping and felonious assault, and as a principal offender on two counts of tampering with evidence.

### Complicity to Kidnapping and Felonious Assault

{¶28} R.C. 2923.03(A) states, in pertinent part,

(A)     No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1)     Solicit or procure another to commit the offense;

(2)     Aid or abet another in committing the offense;

(3)     Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4)     Cause an innocent or irresponsible person to commit the offense.

{¶29} R.C. 2905.01(A) states, in pertinent part:

No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means,

shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

\* \* \*

(2) To facilitate the commission of any felony or flight thereafter[.]

**{¶30}** R.C. 2903.11(A) states:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn[.]

**{¶31}** At trial, evidence demonstrated that the appellant set up a video camera in his garage immediately before the victim was lured there. When J.J. arrived, Virgili struck him, and the appellant prevented the victim's escape by closing the garage doors. Virgili further assaulted J.J., hitting him, kicking him, striking him with a chain and crowbar, and choking him. During the assault, the appellant left the garage, but soon reentered. Upon reentry, the appellant armed himself with a crowbar and threatened the victim. J.J. suffered a broken finger, three skull fractures, and two brain bleeds. Furthermore, his liver was lacerated in three places, his clavicle was broken, and he sustained bruising over much of his body.

**{¶32}** Our review of the entire record, and affording "every reasonable intendment and every reasonable presumption" in favor of the judgment, fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review Section 60, at 191-192 (1978). The appellant's convictions for complicity to kidnapping and felonious assault are not against the manifest weight of the evidence.

**Tampering with Evidence**

**{¶33}** R.C. 2921.12(A) states:

> (A)    No person, knowing that an official proceeding or investigation
>
> is in progress, or is about to be or likely to be instituted, shall do any
>
> of the following:
>
> (1)    Alter, destroy, conceal, or remove any record, document, or
>
> thing, with purpose to impair its value or availability as evidence in
>
> such proceeding or investigation[.]

**{¶34}** Testimony established that the appellant actively participated in destroying and concealing evidence, including cleaning blood from the garage and destroying the victim's phone. J.M.'s testimony further corroborated efforts to delete video evidence under threat of force.

**{¶35}** Our review of the entire record, and affording "every reasonable intendment and every reasonable presumption" in favor of the judgment, fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review Section 60, at 191-192 (1978). The appellant was not convicted of tampering with evidence against the manifest weight of the evidence.

**{¶36}** Accordingly, the appellant's first assignment of error is overruled.

**II.**

**{¶37}** In his second assignment of error, the appellant argues that the trial court erred in denying the appellant's requests to view a confidential record on his co-defendant's mental health. We disagree.

## STANDARD OF REVIEW

**{¶38}** Our standard of review for both evidentiary and discovery matters is an abuse of discretion. *State v. Kopchak*, 2018-Ohio-1136, ¶15 (5th Dist.). To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

## ANALYSIS

**{¶39}** Crim.R. 16 governs discovery in Ohio criminal proceedings. Under Crim.R. 16(B)(4), a defendant is entitled to obtain the results of physical or mental examinations, but it does not automatically grant a defendant access to psychological examinations of third parties, even if the State is in possession of such materials. In fact, Crim.R. 16(J) places limits on discovery. Specifically, the rule excludes "[m]aterials that by law are subject to privilege, or confidentiality, or are otherwise prohibited from disclosure." Crim.R. 16(J)(3).

**{¶40}** According to R.C. 5119.28, all records and reports identifying a person and pertaining to that person's mental health condition, assessment, care, or treatment that are maintained in connection with state-certified services "shall be kept confidential and shall not be disclosed by any person" except in "accordance with other provisions of state or federal law authorizing such disclosure." R.C. 5119.28.

**{¶41}** In the case sub judice, the appellant argues the trial court abused its discretion by denying the appellant's request to review Virgili's psychological examination records, which were prepared for the purpose of sentencing Virgili. However, as provided by R.C. 5119.28 and Crim.R. 16(J), such records are confidential and not discoverable,

absent a specific provision of state or federal law. The appellant fails to cite to any legal authority specifically authorizing a criminal defendant to obtain mental health records of a co-defendant or third party. Accordingly, the appellant has not shown that the trial court's decisions to deny the appellant's motions were unreasonable, arbitrary, or unconscionable.

**{¶42}** The appellant's second assignment of error is overruled.

## III.

**{¶43}** In his third assignment of error, the appellant argues the trial court committed plain error in allowing improper comments during closing argument. We disagree.

### STANDARD OF REVIEW

**{¶44}** The appellant concedes that trial counsel did not object to the appellee's closing argument. As such, we review the issue for plain error. Notice of plain error, pursuant to Crim.R. 52(B), "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978). An error affects substantial rights only if it changes the outcome of the trial. *State v. Spaulding*, 2016-Ohio-8126, ¶64.

**{¶45}** The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 184, 106

S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless it deprives the appellant of a fair trial based on the entire record. *Lott*, supra, 51 Ohio St.3d at 166 (1990).

## ANALYSIS

**{¶46}** During closing arguments, the appellee stated, in pertinent part:

> I'm glad defense counsel mentioned that we can't base our decisions on assumptions. I'm going to ask you, I'm going to ask you, because just like the state has the opportunity to present evidence, so does the defense. And he's right. He is right. He does not have to put on a case. I am not asking him to. But what evidence did the defense present that he left, that the defendant ever left? What evidence other than counsel's argument here tonight? That the defendant is suddenly a hero wearing a cape, saved his life. What evidence is there? The evidence comes from the stand. The evidence comes from a person sitting up here and raising their right hand, swearing an oath to you. There was no evidence that the defendant ever left. For all we know, the defendant is standing guard right outside that back garage door saying, nobody is getting in until I say so. It is just as consistent.

**{¶47}** "It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case." *State v. Collins*, 2000-Ohio-231. However, a prosecutor may jeopardize the integrity of a trial by commenting directly on a criminal defendant's decision not to testify. *Id*. This does not mean a prosecutor is precluded from challenging the weight of the evidence offered in support of the appellant's

exculpatory theory presented by the defense. *Id*. Here, the prosecutor spoke to the weight of the evidence supporting the appellant's theory. Accordingly, the trial court did not commit any error, let alone plain error, by allowing the prosecutor's remarks during the closing argument.

{¶48} Accordingly, the appellant's third assignment of error is overruled.

**IV.**

{¶49} In his fourth assignment of error, the appellant argues that he was denied effective assistance of counsel for failing to object to the prosecutor's comments. We disagree.

**STANDARD OF REVIEW**

{¶50} The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer*, 2012-Ohio-4840 (5th Dist.):

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, [113 S.Ct. 838]; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶51}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

**{¶52}** To show deficient performance, the appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland* at 668. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial process. *Strickland* at 688.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.*

> In light of the "variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064.

*Studer, supra*, at ¶¶58-61. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45 (1980).

{¶53} To demonstrate prejudicial ineffective assistance of counsel, the appellant must show a "reasonable probability that but for counsel's errors, the result of the trial would have been different." *Strickland* at 687-688. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶54} Thus, in order to prevail on an ineffective assistance of counsel argument, the appellant must show both: 1) that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and, 2) that the appellant was prejudiced by such the alleged ineffectiveness.

**ANALYSIS**

{¶55} In our disposition of the appellant's third assignment of error, we found the trial court's failure to declare a mistrial sua sponte based upon the comments of the

prosecutor was not in error. Therefore, the appellant failed to demonstrate that trial counsel's performance fell below an objective standard of reasonable representation.

**{¶56}** Accordingly, the appellant's fourth assignment of error is overruled.

**V.**

**{¶57}** In his fifth assignment of error, the appellant argues that the trial court erred in failing to merge the appellant's convictions for kidnapping and felonious assault, and the trial court failed to merge the two tampering with evidence convictions. We disagree.

**STANDARD OF REVIEW**

**{¶58}** Appellate review of an allied-offense question is de novo. *State v. Miku*, 2018-Ohio-1584, ¶70, citing *State v. Williams*, 2012-Ohio-5699, ¶12. The defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 2013-Ohio-4982.

**ANALYSIS**

**{¶59}** R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

> Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of

the same or similar kind committed separately or with separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶60}** The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 2016-Ohio-880, ¶22. In a plurality opinion, the Supreme Court of Ohio modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson*, 2010-Ohio-6314. The Court directed lower courts to look at the elements of the offenses in question and determine "whether it is possible to commit one offense and the other with the same conduct." *Id*. at ¶48. If the answer is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id*. at ¶49. If the answers to the above two questions are yes, then the offenses are allied offenses of similar import and will be merged. *Id*. at ¶50. If, however, the court determines that the commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id*. at ¶51. The "accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without separate animus[.]" *State v. Rogers*, 2015-Ohio-2459, ¶3.

**{¶61}** *Johnson's* rationale has been described by the Supreme Court of Ohio as incomplete. *State v. Earley*, 2015-Ohio-4615, ¶11. The Court has further instructed lower courts to ask three questions when considering whether a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately, and (3) Were they committed with separate animus or

motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 2015-Ohio-995, ¶31.

{¶62} The appellant was convicted of Complicity to Kidnapping in violation of R.C. 2905.01(A)(2), and Felonious Assault in violation of R.C. 2903.11(A)(1). R.C. 2905.01(A)(2) addresses kidnapping, and provides in pertinent part:

**(A)** No person, by force, threat, or deception, …by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

\* \* \*

**(2)** To facilitate the commission of any felony or flight thereafter[.]

{¶63} R.C. 2903.11(A)(1) addresses felonious assault, and provides in pertinent part:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn[.]

{¶64} The Supreme Court of Ohio, in *State v. Logan*, 60 Ohio St.2d 126 (1979), established the following guidelines to determine whether to merge a kidnapping offense with another offense:

Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate significance independent of the other offense, there exists a

separate animus as to each offense sufficient to support separate convictions;

Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at syllabus; *accord State v. Grate*, 2020-Ohio-5584, ¶108 (noting that even though *Logan* predates *Ruff*, the *Logan* guidelines still govern merger analysis involving kidnapping and other related offenses).

**{¶65}** In the case sub judice, the evidence demonstrated that the appellant installed cameras in advance, remained present during some of the assault, and actively restrained the victim by closing the garage doors, thereby preventing escape. The appellant threatened the victim with a crowbar. The victim was rendered unconscious, restrained with a chain, and held for a prolonged period. Accordingly, the kidnapping and felonious assault offenses were committed separately and with separate animus, and they are not allied offenses of similar import.

**{¶66}** The appellant was also convicted of two Counts of Tampering with Evidence in violation of R.C. 2921.12(A)(1), which states, in pertinent part:

(A)     No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1)     Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceedings or investigation[.]

{¶67} In *State v. Miller*, 2016-Ohio-2673, this Court found that the appellant's two counts of Tampering with Evidence did not merge for the purposes of sentencing when the appellant cleaned up blood from the scene of the crime, removed evidence from the scene, and drove it to a separate area.

{¶68} We find this case to be similar to *Miller*. In the case sub judice, the appellant attempted to clean blood from the garage floor and surrounding items, thereby concealing physical evidence from the crime scene. Separately, he wrapped the victim's cell phone in clothing, destroyed it using a wrench, and placed it in a wood burner to attempt to eliminate it entirely. As in *Miller*, these actions were not a single continuous act but involved different methods, objectives, and evidence. Each act independently impaired the State's ability to investigate and prosecute the offenses. Accordingly, the trial court did not err in declining to merge the appellant's convictions for tampering with evidence.

{¶69} The appellant's fifth assignment of error is overruled.

## VI.

{¶70} In his sixth assignment of error, the appellant argues that the trial court's imposition of a mandatory prison term for his kidnapping was contrary to law. We agree.

## STANDARD OF REVIEW

{¶71} R.C. 2953.08 governs appeals claiming a violation of felony sentencing guidelines. R.C. 2953.08(G)(2) describes this court's standard of review:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶72} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a)     That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b)     That the sentence is otherwise contrary to law.


**ANALYSIS**

{¶73} R.C. 2929.13(F) states, in pertinent part:

(F)     Notwithstanding division (A) to (E) of this section, the court shall impose a prison term or terms … and except as specifically provided in section 2929.20, or section 2967.191 of the Revised Code or when parole is authorized for the offense under section 2967.13 of the Revised Code shall not reduce the term or terms pursuant to section 2929.20, division (A)(2) or (3) of section 2967.193 or 2967.194, or any provision of Chapter 2967 or Chapter 5120 of the Revised Code for any of the following offenses[.]

**{¶74}** The appellant's conviction for Kidnapping in violation of R.C. 2905.01(A)(2) does not fit the criteria listed in R.C. 2929.13(F)(1) through (22). The appellee contends that while the statute mandates a prison term for certain offenses, it does not prohibit a trial court from imposing a mandatory sentence at its discretion for unlisted offenses.

**{¶75}** We find this argument unpersuasive. Ohio courts are courts of limited statutory authority in sentencing matters. *State v. Fisher*, 2010-Ohio-6238, ¶22 ("Judges have no inherent power to create sentences." A trial court may impose a mandatory sentence only when expressly authorized by statute.

**{¶76}** Under the longstanding rule of lenity, "the criminal statutes of the Revised code are to be strictly construed against the state and liberally construed in favor of the accused." *State v. Gray*, 62 Ohio St.3d 514, 515 (1992). *See also* R.C. 2901.04(A). Nothing in R.C. 2929.13(F), or elsewhere in the Revised Code, grants a trial court discretionary authority to convert a non-mandatory offense into a mandatory prison term. Absent express statutory authorization, the imposition of a mandatory sentence exceeds the trial court's sentencing authority and is contrary to law. Therefore, we find the trial court's imposition of a mandatory sentence to be contrary to law.

**{¶77}** Accordingly, the appellant's sixth assignment of error is sustained.

## CONCLUSION

{¶78} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

{¶79} Costs to be split equally between the parties.

By: Baldwin, P.J.

Popham, J. concur.

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

{¶80} I concur in the majority's analysis and disposition of Appellant's first, second, fifth and sixth assignments of error.

{¶81} I concur in judgment only with the majority's disposition of Appellant's third and fourth assignments of error.